FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION as receiver of SUNRISE SAVINGS AND LOAN ASSOCIATION, Plaintiff

and

MAHOGANY RUN CONDOMINIUM ASSOCIATION, INC., and MAHOGANY RUN COMMUNITY SERVICES ASSOCIATION, INC., Intervenors

v.

GARY M. SANDOR and MAUREEN T. SANDOR, Defendants and Third Party Plaintiffs

v.

JAMES S. ARMOUR, MAHOGANY RUN DEVELOPMENT CORPORATION, INTERNATIONAL MORTGAGE SERVICES, LTD., ARMOUR JOINT VENTURE, CRISWELL DEVELOPMENT COMPANY, LOVENLUND RESORT ASSOCIATES, and ARTHUR POMERANTZ, Third Party Defendants

Civil No. 74-1986

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 22, 1988

LINDA SHELBY, ESQ. (POMERANTZ, SHELBY & HURD), St. Thomas, V.I., *for plaintiff*

DENISE FRANCOIS, ESQ. (LAW OFFICES OF MARIA T. HODGE, P.C.), St. Thomas, V.I., *for intervenors*

SORAYA DIASE, ESQ. (COOPER & DIASE), St. Thomas, V.I. *for defendants/third party plaintiffs*

MICHAEL C. DUNSTON, ESQ. (LAW OFFICES OF ADRIANE J. DUDLEY), St. Thomas, V.I., *for third party defendants, James S. Armour, Mahogany Run Development Corporation, International Mortgage Services Ltd., and Armour Joint Venture*

CAROL HURST, ESQ. (DUDLEY, TOPPER & FEUERZEIG), St. Thomas, V.I., *for third party defendants, Criswell Development Company and Lovenlund Resort Associates*

ARTHUR POMERANTZ, ESQ. (POMERANTZ, SHELBY & HURD), St. Thomas, V.I., *for third party defendant Pomerantz*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

The legal imbroglio of the Mahogany Run resort development has spawned yet another nice and intricate point of litigation: Is the Federal Savings and Loan Insurance Corporation ("F.S.L.I.C."), as receiver of a failed savings and loan institution, subject to an alleged oral agreement between a note maker and a third party, whereby the maker's obligation under the note would be assumed by the third party?

Before the Court are the cross-motions of plaintiff, the F.S.L.I.C., and defendants/third party plaintiffs, Gary and Maureen Sandor, for summary judgment on this issue. Because there are no issues

of material fact precluding summary judgment, this matter is ripe for disposition.

## BACKGROUND

Gary Sandor was the vice-president and director of sales for the Mahogany Run Development Corporation ("M.R.D.C.") from October of 1981 to October of 1983. In 1982, M.R.D.C. applied for a construction loan from the Bank of America, N.T. and S.A., in order to construct certain condominium units at Mahogany Run. Before the loan would be closed, however, Bank of America required that M.R.D.C. pre-sell 16 of the 22 proposed units.

In March of 1982, Sandor and his wife, Maureen, contracted with M.R.D.C. to buy one of these units, unit 73M. Their $29,000 downpayment was in the form of a letter of credit, set to expire on July 31, 1983. The Sandors then applied to the Chase Home Mortgage Corporation of New Jersey ("Chase") for a mortgage in the amount of $217,500.

With the mortgage application still pending over a year later, Sandor resigned his position with M.R.D.C. and he and his wife moved to California. They claim to have notified James Armour, another officer of M.R.D.C., of their decision not to go through with the purchase, but were dissuaded from so doing by Armour in order to facilitate M.R.D.C.'s acquisition of the construction loan from Bank of America. The Sandors also claim that Armour represented to them that they would be but nominal purchasers of the condominium and that M.R.D.C. would assume all the obligations under the note. The Sandors further assert that Armour promised to inform Chase of the nominal nature of the purchase and of the assumption of the note by M.R.D.C. Armour denies these allegations.

Closing on the Sandors' purchase of unit 73M took place on October 28, 1983.[1] Arthur Pomerantz, acting pursuant to a power of attorney, executed the necessary mortgage documents, including the note, on behalf of the Sandors.[2] None of the documents, however, reflect the Sandors' claim that the mortgage obligation

---

[1] By this time, the letter of credit had expired and the Sandors disclaim any knowledge of who paid the downpayment.

[2] Pomerantz, who the Sandors assert was also the attorney for Armour and/or M.R.D.C., has been named as one of the several defendants in the Sandors' third party action.

would be assumed by M.R.D.C., nor is there any other documentary evidence, before the Court, of this purported assumption.[3]

The Sandors also claim that this obligation as well as all the other obligations of unit 73M[4] were paid by either M.R.D.C. or one of several other associated entities which, at one time or the other, managed and collected rents generated by the unit.[5] Again, the Sandors have filed no documents that would substantiate this claim.

Chase assigned the Sandors' note to Sunrise Savings and Loan Association ("Sunrise") of Lake Worth, Florida, on November 29, 1983. The note was declared in default sometime in 1985, and Sunrise thereafter instituted this action for debt and foreclosure against the Sandors.

The financially beleaguered Sunrise was placed into the receivership of the F.S.L.I.C. on September 12, 1986, pursuant to 12 U.S.C.A. §§ 1464(d), 1729(c). Thereafter, the F.S.L.I.C. was substituted as plaintiff by Order of this Court, dated December 4, 1987.

In the pleadings and deposition statements presently before the Court, the Sandors equivocate as to either Chase's or Sunrise's knowledge of the assumption. For the purposes here pertinent, however, whether Chase or Sunrise knew of the agreement is of no consequence. We will therefore proceed on the assumption that both Chase and Sunrise knew of the agreement, without prejudice to the claims of any party in the third-party action.

## DISCUSSION

Both the F.S.L.I.C. and the Sandors have filed cross-motions for summary judgment on the issues of whether: (1) the F.S.L.I.C. is

---

[3] At his deposition Gary Sandor stated that there was no documented evidence of the assumption. (Plaintiff's "Supplemental Memorandum of Law," dated April 24, 1987, quoting deposition of Gary Sandor, pp. 83–84.) Yet, in their "Second Amended Third-Party Complaint," the Sandors claim that Armour wrote to them, in a letter dated October 25, 1985, to confirm the agreement. While a copy of this purported letter has not been filed with the Court, its existence would, nevertheless, not alter the outcome of this matter. See infra.

[4] The Mahogany Run Condominium Association, Inc., and the Mahogany Run Community Services Association, Inc., have intervened in this action, pursuant to the Order of this Court, dated February 18, 1988, to collect past due association dues, which constitute a lien on the unit, pursuant to 28 V.I.C. § 922 (1976).

[5] These associations, International Mortgage Services, Ltd., Armour Joint Venture, Criswell Development Company, and Lovenlund Resort Associates, have also been named as defendants in the third-party action.

a holder in due course; and (2) whether the Sandors are estopped from enforcing the oral agreement against the F.S.L.I.C. by virtue of the D'Oench doctrine.

## HOLDER IN DUE COURSE STATUS

■■ A holder in due course is one who takes an instrument for value, in good faith, and without notice that the instrument is overdue or has been dishonored or of any defenses against or claim to it on the part of any person. 11A V.I.C. § 3—302 (1965). The F.S.L.I.C.'s attempt to benefit from the protections of this status is, however, without basis, since, as a receiver, it is statutorily excluded from holder in due course status. Id. at § 3—302(3) and comment 3; cf. F.S.L.I.C. v. Hsi, 657 F. Supp. 1333, 1333–37 (E.D. La. 1986) (F.S.L.I.C. is not a holder in due course because it acquired assets of failed savings and loan in bulk sale transaction, citing to Louisiana's version of the Uniform Commercial Code, LSA—R.S. 10:3-302).

## D'OENCH DOCTRINE

Pursuant to the alleged side agreement, the Sandors seek to have the note, as it stands, declared void and unenforceable and for M.R.D.C. and/or Armour and/or Lovenlund Resort Associates[6] to be declared the true obligors under the note. The merits of this claim must be examined in light of the United States Supreme Court's seminal opinion in D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447 (1942).

D'Oench involved the Federal Deposit Insurance Corporation's ("F.D.I.C.") acquisition of a note in a "purchase and assumption" transaction.[7] The maker sought to disavow the note by claiming failure of consideration based on an undisclosed agreement between it and the failed bank that the note would not be called for payment. The High Court held that this "secret agreement" could not be raised as a defense to a suit by the F.D.I.C. because to permit such

---

[6] See supra at note 5, and text accompanying note.

[7] The F.D.I.C. and the F.S.L.I.C. serve parallel functions, with the major difference being that the former insures commercial banks, while the latter insures savings and loan institutions. See 12 U.S.C.A. § 1811 et seq.; 12 U.S.C.A. § 1724 et seq.; see generally R. Clark, The Soundness of Financial Intermediaries, 86 Yale L.J. 1 (1976).

For an overview of the agencies' function, with specific reference to the F.D.I.C., see Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.), cert. den., 459 U.S. 826, reh. den., 459 U.S. 1059 (1982):

a defense would tend to deceive the banking authorities. 315 U.S. at 460.

Thus developed the D'Oench doctrine which has been described as a rule of estoppel which "prevents those who give notes to federally insured banks from raising defenses based on alleged secret agreements they had with the officers of failed banks with regard to the enforceability of promissory notes. Hsi, 657 F. Supp. at 1337.[8]

While D'Oench has been reaffirmed in scores of cases involving the F.D.I.C., see, e.g., Langley v. F.D.I.C., 108 S.Ct. 398 (1987); F.D.I.C. v. Gulf Life Ins. Co., 737 F.2d 1513 (11th Cir. 1984); F.D.I.C. v. Velez, 678 F.2d 371 (1st Cir. 1982); its application to the F.S.L.I.C., until recently, has been limited. See, e.g., F.S.L.I.C. v. Kearney Trust Co., 151 F.2d 720 (8th Cir. 1945). Both organizations, nonetheless, serve parallel functions of insuring deposits and stabilizing our banking system—functions which the D'Oench Court sought to safeguard. See, e.g., Gunter v. Hutcheson, 674 F.2d at 869-70 ("[T]he F.D.I.C. operates under authority derived from a specific statutory scheme passed by Congress in exercise of a 'constitutional function or power' to protect and stabilize the national banking system."); Telegraph Savings and Loan Ass'n v. F.S.L.I.C., 564 F. Supp. 880, 894 (N.D. Il. 1982), aff'd 705 F.2d 1019 (7th Cir.), cert. den. 464 U.S. 992 (1983) (purpose of 12 U.S.C.S. § 1729 is to preserve public confidence in financial institutions and not merely to protect integrity of F.S.L.I.C.'s insurance fund).

The district court of Louisiana has been one court that has applied D'Oench to the F.S.L.I.C. In F.S.L.I.C. v. Hsi, the F.S.L.I.C. had sued to enforce four promissory notes executed by defendants

---

The [F.D.I.C.] is a federal agency which insures bank deposits. As insuror (sic) one of the primary duties of the F.D.I.C. is to pay the depositors of a failed bank. The F.D.I.C. has two methods of accomplishing this duty. The simplest (sic) method is to liquidate the assets of the bank and then pay the depositors their insured amounts, covering any shortfall with insurance funds . . . To avoid the significant problems with liquidation, the F.D.I.C. whenever feasible employs a "purchase and assumption" transaction in which [it] attempts to arrange for another bank to "purchase" the failed bank and reopen it without interrupting banking operations and with no loss to depositors.
674 F.2d at 865.

[8] The D'Oench doctrine has since been codified at 12 U.S.C.A. § 1823(e), which statute applies only to the F.D.I.C. Nonetheless, D'Oench still stands as a principle of federal common law which has been applied extensively in cases involving the F.D.I.C., and to a more limited extent, to matters involving the F.S.L.I.C.

and to be declared pledgee of certain securities pledged by defendants as security for the notes. The defendants sought to invalidate the note and pledge agreement which they asserted were the result of certain misrepresentations made by the failed bank. The Court, in granting summary judgment in favor of the F.S.L.I.C., wrote that:

> [B]anking institutions must be able to enforce notes in accordance with their written terms even in the face of wrongdoing by a failed bank, in order to ensure the smooth administration of bank insurance and avoid panic . . . D'Oench estoppel must extend to cases in which defendants assert defenses of fraud in the inducement by a failed bank, against the F.S.L.I.C. when it seeks to enforce the promissory notes of failed savings and loan institutions.

757 F. Supp. at 1338; accord Bailey v. Metro Fed'l Savings & Loan Ass'n, 642 F. Supp. 616, n.5 (W.D. La. 1986); F.S.L.I.C. v. Lafayette Investment Properties, Inc., Civ. No. 87-1273, Slip Op. at 3-4 (E.D. La. Feb. 8, 1988) (unwritten side agreement to release borrower from obligations under note found unenforceable against F.S.L.I.C.); Dill v. F.S.L.I.C., No. LR-C86-734, Slip Op. at 2-3 (E.D. Ark. Jan. 25, 1988) (oral representations of bank officer that borrower would not be liable on note not enforceable against F.S.L.I.C.); F.S.L.I.C. v. Lefeve, Civ. No. S87-0011(R), Slip Op. at 10-17 (S.D. Ms. Dec. 29, 1987).

Moreover, even if there does exist a letter from Armour confirming the agreement (supra at n.3), this would not alter the inevitable course of this action, since it is plainly a separate collateral agreement, see Lupin v. F.S.L.I.C., Civ. No. 85-5898, Slip Op. at 2-7 (E.D. La. Mar. 31, 1987) (even though the agreement altering the terms of the note was in writing, agreement held not enforceable against the F.S.L.I.C. because it was separate from and collateral to the note).

■ The overwhelming authority is that the F.S.L.I.C., like the F.D.I.C., must be protected from hidden agreements that would defeat its interest in otherwise facially valid notes. Consequently, even if the Sandors were able to show that Chase and/or Sunrise knew of this claimed agreement between the Sandors and M.R.D.C., the agreement would not be enforceable against the F.S.L.I.C.

432

Summary judgment will be granted in favor of the F.S.L.I.C., without prejudice to the Sandors' third-party action for indemnification, inter alia.

Judgment will be entered, accordingly, upon the F.S.L.I.C.'s submission of a proposed judgment.

## ORDER

The premises considered, therefore, and the court being fully advised,

IT IS ORDERED that the motion of defendants/third-party plaintiffs, Gary and Maureen Sandor, for summary judgment, be, and the same is hereby DENIED; and it is

FURTHER ORDERED that the motion of plaintiff, the Federal Savings and Loan Insurance Corporation for summary judgment be, and the same is, hereby GRANTED.