939 F.2d 1231
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the
FSLIC Resolution Fund, as Receiver of Liberty
Federal Savings and Loan Association,
Plaintiff-Appellee,
v.
Julio S. LAGUARTA, Defendant-Appellant.
 No. 90-2064.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 28, 1991.
 
 Charles W. Kelly, Stephen A. Roberts, Griggs & Harrison, Austin, Tex., for defendant-appellant.
 Robert W. Dupuy, Brown, Maroney & Oaks Hartline, Dallas, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before WISDOM, GARWOOD, and JOLLY, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 This is an appeal from a summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC; Receiver) against Julio S. Laguarta (Laguarta) for a deficiency on a promissory note secured by two tracts of commercial real estate in Houston. Concluding that Laguarta presented--just barely--enough evidence below to defeat the motion for summary judgment, we reverse and remand for further proceedings.
 
 Facts and Proceedings Below
 
 2
 This litigation began as an interpleader action brought in state court by Houston Title Company (Houston Title), formerly known as Investors Title Company. Houston Title alleged that it possessed certain capital recovery charge receipts that were subject to conflicting claims of entitlement by the defendants-in-interpleader. These capital recovery charge receipts represented sewage capacity purchased from the city of Houston for commercial real estate that had been purchased by Laguarta. Houston Title, as escrow agent during the closing of the sale of the property to Laguarta, acquired the receipts, on which the sellers retained a first lien and Liberty Federal Savings and Loan Association (Liberty) a second lien. After the sellers claimed to have foreclosed on their security interest in the receipts, Houston Title, as stakeholder, brought the interpleader action to resolve the conflicting claims of the sellers, Laguarta, and the Federal Savings and Loan Insurance Corporation (FSLIC; Receiver), which, as Receiver of Liberty, had succeeded to its security interest. That portion of the litigation has been settled and is not involved in this appeal.
 
 
 3
 This appeal concerns a cross-claim filed against Laguarta by the FSLIC. This cross-claim, brought after the FSLIC had removed the case to federal court pursuant to 12 U.S.C. Sec. 1730(k)(1),[1] alleged that Laguarta had defaulted on a promissory note to Liberty secured by the same real estate that was involved in the interpleader action.
 
 
 4
 On September 13, 1985, Laguarta purchased for development[2] two tracts totalling 377 acres of commercial real estate south of Loop 610 on Highway 288 in Houston. He paid $940,500 as a down payment and executed two non-recourse promissory notes (Underlying Notes) totalling $6,610,438.94 to the sellers for the balance.[3] On the same day, he entered into a Land Acquisition Loan Agreement (Loan Agreement) with Liberty and executed a wraparound promissory note to it in the amount of $8,609,704.32. This note provided that it would mature on September 13, 1986. The principal sum of the wraparound note included the two Underlying Notes to the sellers, and an additional sum, which Liberty was to advance, of $1,999,265.38.[4] On June 17, 1986, Laguarta and Liberty executed a Modification Agreement, which modified the Loan Agreement to increase the principal amount from $8,609,704.32 to $9,895,000.00 and increase the sum to be advanced by Liberty from $1,999,265.38 to $3,284,561.06;[5] they also executed a Renewal Note in conjunction therewith, which modified the original promissory note accordingly. The Modification Agreement, though dated June 17, 1986, provided that it was effective as of September 13, 1986, but the Renewal Note, likewise dated June 17, 1986, provided that it was effective as of September 13, 1985. The Modification Agreement provided that the entire balance of the loan and all accrued, unpaid interest would be due one year from the date of execution of the Renewal Note.[6] The Renewal Note provided that the interest payments thereon would be due quarterly on the 13th of the following December, March, and September, with the first payment due on December 13, 1986. But the Renewal Note also specified that all principal and interest was due on September 13, 1986.
 
 
 5
 Under the original Loan Agreement, Laguarta was entitled to be advanced funds to meet his land acquisition costs, upon his request; the request had to tie the amount of money sought to the items listed in an approved budget. This provision was not altered by the Modification Agreement or Renewal Note. A budget was prepared in conjunction with the original $8,609,704.32 wrap-around note, but no budget appears to have been prepared for the Modification Agreement or Renewal Note. Laguarta claims to have made requests for advances by letter on at least two occasions: October 20, 1986 and November 29, 1986. Liberty did not advance the funds. Laguarta claims this forced him to default on the Underlying Notes, causing the sellers to repossess the land, and causing him to default on the Renewal Note. The record does not definitively indicate why Liberty failed to advance the funds. Laguarta argues that Liberty reneged on its funding obligations because it was instructed to do so by the FSLIC,[7] but the Receiver, while not directly denying these allegations, argues that Laguarta's failure to comply with various preconditions for advances excused Liberty from performance.[8]
 
 
 6
 On April 24, 1987, the Federal Home Loan Bank Board appointed the FSLIC as sole receiver of Liberty pursuant to 12 U.S.C. Sec. 1464(d)(6)(A). On August 1, 1988, the FSLIC, as receiver of Liberty, succeeded by the FDIC,[9] cross-claimed against Laguarta on the Renewal Note. The Receiver subsequently moved for summary judgment, presenting in support an affidavit from a representative of the Receiver and a computer print-out of Laguarta's loan activity at Liberty to establish the balance due. Laguarta in his response objected to the affidavit and computer print-out as hearsay but did not directly contest the loan balance. He did, however, assert as an affirmative defense that Liberty had breached its funding obligations under the Loan Agreement, causing financial loss to him, the amount of which being an issue of material fact precluding summary judgment. Laguarta also raised other affirmative defenses which he does not press on appeal.[10]
 
 
 7
 The Receiver's reply, filed in May 1989, argued that (1) the Renewal Note matured on September 13, 1986, before the funding requests were made, and not in 1987 as claimed by Laguarta; (2) the letters did not properly request funds under the loan agreement even if the loan had not already matured; and (3) the defense is barred by the federal common law doctrine of D'Oench, Duhme. The district court appears to have accepted each of these arguments in its brief November 2, 1989 order awarding summary judgment to the Receiver.[11] The court awarded $2,041,971.46, representing the outstanding principal balance on the Renewal Note; $229,568.19, representing the amount of interest accrued as of the date of maturity, September 13, 1986; interest from September 14, 1986 until paid; $36,803.67, representing attorney's fees;[12] and court costs.Discussion
 
 I. Standard of Review
 
 8
 Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court reviews the grant of a summary judgment motion de novo, using the same criteria used by the district court in the first instance. Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir.1988). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Accordingly, we "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir.1986) (citing Southmark Properties, Inc. v. Charles House Corp., 742 F.2d 862, 873 (5th Cir.1984)). The standard for a grant of summary judgment in federal court "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); accord Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 223 (5th Cir.1986); see Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc).
 
 II. Maturity Date
 
 9
 Laguarta argued below and argues on appeal that ambiguity as to the maturity date of the Renewal Note creates a genuine issue of material fact that precludes summary judgment. The district court determined, without elaboration, that the note matured on September 13, 1986;[13] Laguarta argues that it matured either on June 17, 1987 or on September 13, 1987. Although the Renewal Note appears to specify a maturity date of September 13, 1986, it is, we conclude, ambiguous on its face. It provides for interest payments beginning three months after the entire obligation falls due, which makes no sense. The Renewal Note is certainly ambiguous when read in conjunction with the Modification Agreement, which states that the note would mature one year from the date of execution, which would be June 17, 1987.[14] Also, the Renewal Note provided that it was a "renewal, extension and modification" (emphasis added) of the original promissory note. It may well be, as the Receiver argued below, that the Modification Agreement and Renewal Note were intended to change only the amount of the loan and not the maturity date, but this is not established by any summary judgment evidence.
 
 
 10
 The Receiver argues that even if an ambiguity exists as to the Renewal Note maturity date, that maturity date is not material to its right to recover on the note because Laguarta admits that the note has now matured. Laguarta admits the note has matured[15] but advances on appeal two separate arguments to support his claim that the maturity date is material: (1) a later maturity date supports his affirmative defense that Liberty breached its funding obligations under the Loan Agreement, and (2) a later maturity date would reduce the amount of prejudgment interest he owes.
 
 
 11
 Laguarta argues that the maturity date is material because if the note matured in 1987, then the facts support his affirmative defense that Liberty breached its funding obligation under the Loan Agreement and Modification Agreement. Laguarta claims that this refusal resulted in his inability to make the payments required by the Underlying Notes, which resulted in his default on his obligations on the Underlying Notes and the consequent repossession of the land and capital recovery charge receipts by the sellers, which in turn resulted in substantial financial loss to him. He further points out that the post-maturity interest rate called for by the Note exceeds its pre-maturity rate.
 
 III. D'Oench, Duhme Doctrine
 
 12
 The Receiver argues that the federal common-law doctrine announced in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), precludes Laguarta's affirmative defense even if Liberty did fail to advance funds under the Loan Agreement. The district court, in its order granting summary judgment, appears to have accepted this argument. In D'Oench, Duhme, a demand note for $5,000 was executed in renewal of notes signed several years earlier. The original notes were meant to cover for certain bonds that had defaulted after the maker of the notes had sold them to the bank. The receipt for the notes contained the statement, "This note is given with the understanding it will not be called for payment. All interest payments to be repaid." Id. 62 S.Ct. at 678. The maker of the notes knew that their purpose was to save the bank from having to show the past due bonds among its assets. See id. Recognizing that such "accommodation agreements" would tend to frustrate the government's regulatory and insurance policies by making it difficult for bank examiners to rely on bank records, the Court established a rule under which the maker of a note is estopped from offering such a "secret agreement" as a defense to recovery by the FDIC. Id. at 680-81.[16]
 
 
 13
 The doctrine of D'Oench, Duhme has not been read to mean that there can be no defenses at all to attempts by the FDIC to collect on promissory notes. FDIC v. McClanahan, 795 F.2d 512, 515 (5th Cir.1986). Laguarta argues that the D'Oench, Duhme doctrine is inapplicable for two reasons.
 
 
 14
 First, he argues that "[a]ctual knowledge by the FSLIC of the basis for Laguarta's defenses prior to acquisition of the assets of Liberty precludes the application of the D'Oench, Duhme doctrine," citing in support FDIC v. Wood, 758 F.2d 156 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). This Court, however, in a holding affirmed by the Supreme Court, has determined that "the FDIC's knowledge (whether actual or constructive) of [an] alleged defense is likewise immaterial" under the statutory counterpart of the D'Oench, Duhme doctrine, 12 U.S.C. Sec. 1823(e), applicable to the FDIC in its corporate capacity. FDIC v. Langley, 792 F.2d 541, 545 (5th Cir.1986), aff'd, 484 U.S. 86, 108 S.Ct. 396, 402-03, 98 L.Ed.2d 340 (1987). The Supreme Court, in an opinion by Justice Scalia, decided this issue as a matter of strict statutory construction, Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 402-03, 98 L.Ed.2d 340 (1987), and thus did not completely foreclose the argument that the result would be different under the federal common law doctrine of D'Oench, Duhme. FIRREA, signed into law on August 9, 1989, does not disturb Langley. Although Langley was decided under section 1823(e), we find no reason why we should reach a different result in this respect under D'Oench, Duhme than we would reach under section 1823(e). We know of no case law to support the interpretation proposed by Laguarta, Laguarta cites none other than Wood, which is inapposite, and courts generally give similar interpretations to section 1823(e) and the doctrine of D'Oench, Duhme. See Kilpatrick v. Riddle, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990), cert. denied sub nom. Rogers v. FDIC, --- U.S. ----, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991); Beighley v. Fed. Deposit Ins., 868 F.2d 776, 784 (5th Cir.1989). We reject Laguarta's knowledge argument.
 
 
 15
 Laguarta's primary and stronger argument is that the D'Oench, Duhme doctrine does not preclude his affirmative defense because it arises out of an obligation contained in the Loan Agreement itself. The Receiver admits that an agreement contained in the "note or other loan documents" would not be subject to the application of D'Oench, Duhme. Other courts have so held, and this Court has so concluded in dictum. McClanahan, 795 F.2d at 515 (dictum); Howell v. Continental Credit Corp., 655 F.2d 743, 746 (7th Cir.1981); In re Hunter, 100 B.R. 321, 325-26 (Bankr.S.D.Tex.1989). Notwithstanding its apparent concession that a borrower can defend based upon an obligation contained in loan documents other than a promissory note, the Receiver appears to argue, citing three district court cases in support, that it is bound only by the terms of the promissory note. None of these cases supports the Receiver's position.
 
 
 16
 The Receiver quotes FDIC v. MM & S Partners, 626 F.Supp. 681 (N.D.Ill.1985), in which it argues the court declared that the D'Oench, Duhme doctrine "applies equally to all situations in which the maker's defense is based on something, representations or conduct, outside of the note itself." Id. at 687 (emphasis added). MM & S Partners involved a defense based not upon other loan documents but upon the bank's conduct and representations, so the quoted passage is dictum and taken out of context. The Receiver also cites Lupin v. FSLIC, 1987 WL 9106, 1987 U.S. Dist. LEXIS 5090 (E.D.La. March 30, 1987) (Nos. 85-5896, 86-828, 86-1126) (not published in F.Supp.), in which the court, relying on MM & S Partners, refused to consider defenses and counterclaims based on a written partnership agreement filed in the public records because, although the agreement was not secret, it was separate from and collateral to the loan documents. Lupin is distinguishable as the partnership agreement there, unlike the Loan Agreement and Modification Agreement here, was not a loan document.[17] The third case cited by the Receiver, FSLIC v. Sandor, 684 F.Supp. 403 (D. Virgin Islands 1988), is also clearly distinguishable, as it involved an alleged agreement between a note maker and a third party, whereby the maker's obligations under the note would be assumed by the third party. Id. at 405. Whether the bank knew of the alleged agreement was of no consequence, the court held, relying on the D'Oench, Duhme doctrine. Id. at 407. Unlike the case before us today, Sandor involved a third party agreement collateral to the original loan transaction.
 
 
 17
 We conclude that because the funding obligations were spelled out in the Loan Agreement and Modification Agreement, the D'Oench, Duhme doctrine does not apply here.[18] It is important to bear in mind the policy goals underlying the D'Oench, Duhme doctrine. The test for application of this doctrine to a particular case involves the question of whether or not there was a secret or side agreement between the failed bank and the borrower, which was designed to deceive either the bank's creditors or the public authority, and which is being asserted as the factual basis for the borrower's claims and defenses. D'Oench, Duhme, 62 S.Ct. at 681. As one district judge explained in a case decided under 12 U.S.C. Sec. 1823(e), which codifies for the FDIC in its corporate capacity a rule virtually identical to D'Oench, Duhme:
 
 
 18
 "None of the policies that favor the invocation of this statute are present in such cases because the terms of the agreement that tend to diminish the rights of the FDIC appear in writing on the face of the agreement that the FDIC seeks to enforce." Riverside Park Realty Co. v. FDIC, 465 F.Supp. 305, 313 (M.D.Tenn.1978); see also Howell, 655 F.2d at 747 (quoting this passage with approval).
 
 
 19
 We reject the suggestion that the Loan Agreement and Modification Agreement were somehow collateral to the Renewal Note. They clearly were integral to the loan transaction, and the Receiver does not contend they were absent from the loan file or otherwise concealed. Indeed, the Renewal Note itself expressly refers to "the Loan Agreement and any amendment thereto." Accordingly, we reject the Receiver's argument that the breach of the funding obligation defense is barred by the D'Oench, Duhme doctrine.[19]IV. New Issues Raised by Receiver
 
 
 20
 The Receiver in its opening appellate brief invokes only the D'Oench, Duhme doctrine in response to Laguarta's funding obligation defense. In a supplemental brief filed in this Court on the day prior to argument, however, the Receiver also raises three arguments on the merits in support of its contention that Laguarta had not complied with various conditions precedent to advances under the Loan Agreement and Modification Agreement: (1) Laguarta was in default on the Underlying Notes, (2) Laguarta had not obtained the required appraisal on the property securing the loan, and (3) the requests for advances were not in accordance with an approved budget. The default and appraisal arguments were never raised below either by the parties or by the court; the budget issue was raised below, at least in part.
 
 
 21
 We hold that it would not be proper under the circumstances of this case to affirm a summary judgment on these grounds that were neither raised below by the Receiver nor even raised sua sponte by the district court. It is true that we may affirm a summary judgment on a ground not relied upon by the district court. Coral Petroleum, Inc. v. Banque Paribas-London, 797 F.2d 1351, 1355 n. 3 (5th Cir.1986); Davis v. Liberty Mut. Ins. Co., 525 F.2d 1204, 1207 (5th Cir.1976). This Court has clearly held, however, that it will generally not consider a new ground on appeal raised by an appellant in opposition to summary judgment. Frank C. Bailey Enterprises, Inc. v. Cargill, Inc., 582 F.2d 333, 334 (5th Cir.1978). The same should apply to new grounds raised by an appellee in defense of summary judgment where the parties were not afforded an opportunity to develop the issue below, and it was not implicit or included in the issues or evidence tendered below, so that the party was not on notice of the need to meet it, and the record appears not to be adequately developed in that respect.[20]
 
 
 22
 Accordingly, we decline to consider the new arguments raised by the Receiver in its supplemental brief respecting Laguarta's being in default on the Underlying Notes and not having obtained an appraisal. Thus, the only remaining question is whether Laguarta's requests for advances were in accordance with an approved budget.
 
 V. Approved Budget Issue
 
 23
 The FSLIC devoted virtually all of its discussion in its below filed reply in support of summary judgment[21] to the argument that the breach of funding obligations defense is barred by the D'Oench, Duhme doctrine, and we have already concluded that the D'Oench, Duhme doctrine does not apply here. The only other argument presented by the FSLIC in support of summary judgment was its assertion, made without elaboration except quotation of Paragraph 3.3 of the Loan Agreement, that "Laguarta has failed to produce any evidence that it made a 'Request for Advance' in accordance with the requirements of the Loan Agreement for Liberty to release the funds necessary to make payments on the underlying notes." The district court appears to have accepted this argument, concluding that Laguarta's requests for the claimed amounts had failed to comply with this paragraph of the Loan Agreement. Paragraph 3.3 of the Loan Agreement provides that, to request an advance of funds, Laguarta was to have fully described, itemized and categorized all land acquisition expenses in accordance with the approved budget. Laguarta wrote two letters to Liberty in October and November of 1986 requesting advances. The district court concluded that Laguarta was not entitled to the advances because he failed to comply with the requirements of Paragraph 3.3.[22]
 
 
 24
 Although this is indeed a close question, we conclude that Laguarta presented sufficient evidence below to defeat the motion for summary judgment. Laguarta has shown that it presented written requests for advances and argues that Liberty reneged on its commitment because federal regulators ordered it to do so. Although a budget was prepared in connection with the original Loan Agreement, none is in the record in connection with the Modification Agreement. Nonetheless, at least some of the advance requests, including requests for legal fees, engineering work, and utilities, appears to be covered at least in part by the Loan Agreement budget, which presumably would still be effective if not superseded by a later budget.[23] It may well be, as the Receiver argues, that the budgeted amounts had already been advanced, but we are not able to draw such an inference in favor of the Receiver on the basis of the present record. In addition, neither the Receiver's papers in support of summary judgment nor the district court's opinion explain how or in what respects Laguarta's funding requests did not comply with the approved budget. Moreover, both the Receiver and the district court appear to have limited their discussion of the budget issue to the question of interest payments on the Underlying Notes.[24] However, the requests for advances included expenses in addition to interest payments on the Underlying Notes.
 
 
 25
 Accordingly, we must reverse the summary judgment because (1) the district court and the Receiver below limited their discussion (actually, little more than a conclusory allegation) of the budget issue to the question of advances to pay interest on the Underlying Notes, and thus do not explain why, or submit summary judgment evidence demonstrating that, Liberty did not default by failing to advance other requested funds; and (2) Laguarta in any event appears to have presented enough evidence, though barely enough, of a proper advance request to preclude summary judgment on the present sparse record.[25]Conclusion
 
 
 26
 For the foregoing reasons, the judgment of the district court is reversed and the cause remanded.
 
 
 27
 REVERSED and REMANDED.
 
 
 
 [1]
 Title 12 U.S.C. Sec. 1730 was repealed on August 9, 1989 by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L.No. 101-73, Title IV, Sec. 407, 103 Stat. 363, which abolished the FSLIC and transferred its functions to other federal agencies. Title 12 U.S.C. Sec. 1730(k)(1) provided in pertinent part as follows:
 "Notwithstanding any other provision of law, (A) the Corporation shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect...."
 
 
 [2]
 According to Laguarta's affidavit of May 8, 1989, which was attached to his response to the FSLIC's motion for summary judgment, Laguarta planned "a mixed use master plan development, including single family dwellings, retail shopping space, office space and light industrial capabilities [sic]."
 
 
 [3]
 For the first tract, which totalled 208.8 acres, Laguarta gave the sellers a promissory note in the original principal sum of $4,598,688.94. For the second tract, of approximately 168.8 acres, Laguarta gave the sellers a promissory note in the original principal sum of $2,011,750.00. Interest and principal payments (calculated on a ten-year amortization) were due each September 13th, with the balance being due on September 13, 1991
 
 
 [4]
 The modification agreement of June 17, 1986 uses this $1,999,265.38 figure. The Loan Agreement specifies the sum to be advanced by Liberty as being up to $1,013,522.00. This discrepancy is accounted for by the $940,500 down payment and by various bank fees:
 $1,999,265.38 Modification Agreement figure
 -940,500.00 down payment
 -10,135.22 brokerage fee (1%)
 -20,270.44 origination fee (2%)
 -10,135.22 commitment fee (1%)
 -4,702.50 fee for $940,500 letter of credit to underlying note holders due
 10/15/85
-------------
$1,013,522.00 Loan Agreement figure.
 The brokerage, commitment, and origination fees were apparently calculated based on the $1,013,522.00 Loan Agreement figure. Most of the $1,013,522 in funds remaining to be advanced appears to have been required to pay $951,581.76 to the city of Houston for the three capital recovery charge receipts.
 
 
 [5]
 The Modification Agreement indicated an origination fee of $65,691.22 (2%), a commitment fee of $32,845.61 (1%), and a brokerage fee of $32,845.61 (1%). As this was a modification of the Loan Agreement, these fees appear to have included amounts already assessed under the Loan Agreement and that presumably were not paid a second time. Curiously, the Modification Agreement appears to have assessed fees for the first time on the $940,500 down payment and the various fees that were collected at the execution of the Loan Agreement. The Loan Agreement assessed the fees based on the net advance of $1,013,522.00, but the Modification Agreement calculates the fees due using the gross $1,999,265.38 figure
 
 
 [6]
 This would indicate a maturity date of June 17, 1987
 
 
 [7]
 Liberty appears to have been operating under close regulatory supervision since at least September 1986
 
 
 [8]
 The competing assertions of Laguarta and the Receiver are not, of course, entirely or necessarily mutually exclusive
 
 
 [9]
 On October 23, 1989, the FDIC as Manager of the FSLIC Resolution Fund as Receiver for Liberty was substituted for the FSLIC in this action as provided for in FIRREA
 
 
 [10]
 Laguarta asserted below that Liberty, through its president and chief executive officer, James Hague, had represented that the bank would continue to extend and modify its loan as necessary to develop and sell the property secured by the note, and that he entered into the loan transaction with Liberty in reliance on these assurances. Given the evidence that the loan was for development purposes, these assertions are not facially incredible, but the district court found, and Laguarta now concedes, that the federal common law D'Oench, Duhme doctrine precludes the use of such oral representations against the Receiver. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)
 
 
 [11]
 The district court granted summary judgment without holding a hearing on the motion, nor is there any indication in the record that the court advised the parties that the motion would be taken under advisement without a hearing. Cf. Capital Films Corp. v. Charles Fries Productions, 628 F.2d 387, 391-92 (5th Cir.1980); Kibort v. Hampton, 538 F.2d 90 (5th Cir.1976); Enochs v. Sisson, 301 F.2d 125 (5th Cir.1962). Nonetheless, Laguarta does not complain that the ten day notice and hearing requirements of Federal Rule of Civil Procedure Rule 56(c) were not observed by the district court, so the question of its compliance with this aspect of the procedural safeguards of Rule 56(c) is not before us
 
 
 [12]
 The summary judgment order instructed the Receiver to file a motion for reasonable attorney's fees, and it also provided that Laguarta would have twenty days from the date of the filing of the Receiver's motion to file a response, if desired. On December 4, 1989, seven days after the filing of the Receiver's motion on November 27, 1989, the district court awarded attorney's fees in the amount requested in the Receiver's motion. No response from Laguarta to the Receiver's motion is in the record, although Laguarta had indicated in its response to the Receiver's motion to summary judgment that it would contest the smaller $30,500 fee sought in its summary judgment motion. Nonetheless, Laguarta does not in this appeal question the amount of attorney's fees awarded to the Receiver or whether he was afforded an opportunity to contest the reasonableness of the fees in the district court, so those questions are not before us and are in any event moot in light of our disposition of this appeal
 
 
 [13]
 The district court's order in one place describes the maturity date as September 13, 1989, and in another place as September 13, 1986. The reference to 1989 appears to have been a typographical error
 
 
 [14]
 The Modification Agreement provides in pertinent part as follows:
 "Interest shall be payable quarterly on the principal amount advanced and outstanding, with the entire outstanding principal balance and all accrued, unpaid interest due and payable in full on or before one (1) year from the date of execution of the Renewal Note." (Emphasis added).
 Contrary to this provision, the Renewal Note states the following:
 "All such interest accruing hereon shall be payable to the Holder hereof quarterly on the 13th day of December, March, and September, with the first such payment being due on December 13, 1986. The entire outstanding principal balance of this Note, in excess of the principal on the Underlying Notes, together with all accrued and unpaid interest hereon, shall be due and payable in full on or before September 13, 1986." (Emphasis added).
 
 
 [15]
 Laguarta, in his answer to the Receiver's cross-claim, admitted that the loan had matured but contested the maturity date. In this appeal, Laguarta admits the loan matured no later than September 13, 1987
 
 
 [16]
 The D'Oench, Duhme doctrine has been extended to protect the FSLIC as well as the FDIC. McLemore v. Landry, 898 F.2d 996, 1000 (5th Cir.), cert. denied sub nom. River Villa Partnership v. Sun Belt Fed. Bank, F.S.B., --- U.S. ----, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990)
 
 
 [17]
 There is some indication that Lupin limits its definition of "loan documents" to the promissory note and mortgage and implies that a court may look no further in ruling in a suit brought by a receiver to recover on a promissory note to a failed financial institution. To the extent Lupin suggests this, we disapprove Lupin, as such an expansive interpretation of the D'Oench, Duhme doctrine would even appear to require a judgment in favor of a receiver for the face amount of the promissory note irrespective of whether it had actually been fully funded. Here the Receiver admits the Renewal Note was only partially funded
 
 
 [18]
 In a supplemental brief filed on the eve of oral argument, the Receiver for the first time argued that 12 U.S.C. Sec. 1823(e) is applicable to this case. Section 1823(e) codifies a statutory rule similar to the estoppel rule of D'Oench, Duhme for cases where the FDIC has acquired notes in its corporate capacity, but it does not apply to the FSLIC (the original receiver in this case) and, at the time this claim was brought, did not apply to cases, like this one, where the FDIC is acting as a receiver. Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n, 885 F.2d 266, 274-75 (5th Cir.1989); Beighley v. FDIC, 868 F.2d 776, 783 (5th Cir.1989); FDIC v. McClanahan, 795 F.2d 512, 514 (5th Cir.1986). Section 1823(e) was amended on August 9, 1989 by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L.No. 101-73, Title II, Sec. 217(4), 103 Stat. 183, 254, to apply where the FDIC is acting as a receiver or conservator
 Section 1823(e) now provides as follows:
 "(e) Agreements against interests of Corporation
 "No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 [concerning conservatorship and receivership powers of the FDIC] of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
 "(1) is in writing,
 "(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 "(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 "(4) has been, continuously, from the time of its execution, an official record of the depository institution."
 The record does not establish as a matter of law (nor was it ever claimed below) that the conditions of Sec. 1823(e) have not been met, so even if Sec. 1823(e) were applicable and to be considered by us, it does not afford any basis for affirming the judgment below beyond that which is afforded by D'Oench, Duhme.
 
 
 [19]
 We likewise reject the Receiver's argument, raised for the first time in a conclusory sentence in its belated supplemental brief in this Court, that Laguarta's defenses are barred by the federal common-law holder in due course doctrine. Here the FDIC sues only in its capacity as receiver for the institution which made the loan and is payee in the note sued on, and the FDIC does not assert, nor does the record establish, that the loan or note has ever been transferred or was ever part of a purchase and assumption transaction. To the extent that it precludes defenses beyond those precluded by D'Oench, Duhme, the federal holder in due course doctrine is inapplicable to such a situation. Gunter v. Hutcheson, 674 F.2d 862, 872-73 (11 Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). See Campbell Leasing, Inc. v. FDIC, 901 F.2d 1244, 1248 (5th Cir.1990); FSLIC v. Murray, 853 F.2d 1251, 1256 (5th Cir.1988). Indeed, a major policy goal underlying the federal common-law holder in due course doctrine is to facilitate purchase and assumption transactions of failed financial institutions in lieu of liquidations. Campbell Leasing, 901 F.2d at 1248; Gunter, 674 F.2d at 870-73
 
 
 [20]
 At least three circuits have indicated that a summary judgment generally should not be affirmed on grounds that were neither raised nor relied on below. Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1537 (D.C.Cir.1984) (en banc) (citing Frank C. Bailey, supra ), vacated on other grounds, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985); Charbonnages de France v. Smith, 597 F.2d 406, 416 & n. 9 (4th Cir.1979) (dictum); Box v. A & P Tea Co., 772 F.2d 1372, 1376 (7th Cir.1985) (citing Frank C. Bailey, supra ), cert. denied, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); see also Arlinghaus v. Ritenour, 622 F.2d 629, 638 (2d Cir.), cert. denied, 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980). To our knowledge, only the Ninth Circuit has declared the opposite. Paskaly v. Seale, 506 F.2d 1209, 1211 n. 4 (9th Cir.1974) (appellate court can affirm on any ground supported by the record and discussed in the appellate court briefs). We do not suggest that if the issues were implicit or included in those raised below or the evidence in support thereof, or if the record appears to be adequately developed in respect thereto, that affirmance may not rest thereon. However, that is not the case here
 
 
 [21]
 The FSLIC's opening memorandum of law in support of summary judgment merely argued that Laguarta had not raised the breach of funding obligations argument as an affirmative defense in his answer to the FSLIC's cross-claim as required by Rule 8(c) of the Federal Rules of Civil Procedure. Laguarta mooted that argument in his response by filing an unopposed motion, granted by the district court, to amend his answer to assert that affirmative defense
 
 
 [22]
 Both the Receiver and the district court referred to the relevant provision of the Loan Agreement as "Paragraph 33" but clearly appear to have been referring to Paragraph 3.3
 
 
 [23]
 Whether or not a new or additional budget was ever prepared in connection with the Modification Agreement is not reflected by the record. The Receiver argues (without supporting summary judgment evidence) that the requests for advances were not in compliance with an approved budget, but it never directly argues that that was the reason Liberty did not advance the funds as requested. Laguarta, on the other hand, argues that Liberty reneged on its funding commitment because it was ordered to do so by federal regulators for reasons having nothing to do with the absence of or a discrepancy with an approved budget
 
 
 [24]
 According to an affidavit executed by Laguarta and filed in connection with his opposition to summary judgment, at least some of the new funds committed in the Modification Agreement were for interest on the Underlying Notes
 
 
 [25]
 We need not and do not decide whether Laguarta was entitled under the provisions of the loan to request advances from Liberty to make interest or principal payments on the Underlying Notes (nor do we pass on the other issues raised by Laguarta and not expressly ruled on herein). As we understand Laguarta's supplemental appellate brief, filed after oral argument, he argues that although the $940,500 down payment was a budgeted item in the approved budget, he made the down payment with his own funds and that doing so created a "reserve" for the payment of interest on the Underlying Notes. Laguarta did not develop this issue in detail below but, because we are reversing the summary judgment on other grounds, will have the opportunity to develop this (and other issues not resolved herein) on remand. Similarly, the Receiver will also have the opportunity to raise other issues on remand, including the default and appraisal issues we hold cannot now be considered by us because not raised below