IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-20347
Summary Calendar

JEFFREY COURTNEY

Plaintiff - Appellant

v.

ARTHUR ANDERSEN LLP; RODNEY R PROTO; EARL E DEFRATES;
WASTE MANAGEMENT INC

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-1031

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The petition for rehearing is DENIED. This Court's opinion issued on January 3, 2008 is hereby withdrawn, and the following opinion is substituted:

This case arises out of the settlement agreement from the Waste Management, Inc. ("WMI") securities class action. In re Waste Management, Inc. Securities Litigation, 177 F. Supp. 2d 1373 (J.P.M.L. 2001). After receiving and

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

cashing his settlement check, class member Jeffrey Courtney sued WMI, WMI's auditor, Arthur Andersen, LLP, and WMI officers Rodney Proto and Earl Defrates (collectively, the "WMI defendants") alleging that he was not compensated for a block of 37,902 WMI shares which were not included in the settlement agreement. The district court found that Courtney released his claims when he signed the settlement agreement and cashed the settlement check. For the reasons stated below, we affirm.

## I. FACTS AND PROCEEDINGS

Courtney acquired 37,902 shares of stock in USA Waste in May 1998. USA Waste merged with the old Waste Management, Inc. in July 1998 to form the new WMI. Following the July 1998 merger, Courtney's USA Waste stock changed names from USA Waste to WMI. In July 1999, WMI announced that it would miss its projected earnings for the second quarter of the year. WMI's stock price declined dramatically, and a large number of shareholder derivative suits followed. The Judicial Panel on Multidistrict Litigation ("JPML") consolidated all of the securities actions against WMI in the Southern District of Texas in November 2001. The district court approved a class action settlement in May 2002.

The WMI Notice of Settlement defined the class as all of those who "purchased or otherwise acquired" WMI stocks during the class period, "including but not limited to, individuals . . . who purchased or otherwise acquired USA Waste securities . . . on or after June 11, 1998." The class period extended from June 11, 1998 until November 8, 1999.

Courtney received the Notice of Settlement, which included a release of all claims against WMI ("the Release"). Courtney did not opt out of the class, and he identified two blocks of WMI stock on his proof-of-claim form. The first block consisted of 37,902 shares of USA Waste stock, which Courtney acquired in May 1998, prior to the beginning of the class period ("Block 1"). The second block

consisted of 9,842 WMI stocks which Courtney acquired in December 1999, during the class period ("Block 2"). Courtney called the office of the claims administrator in July 2003 and was informed that Block 1 was not included in his claim because he acquired the stock before the class period. In March 2004, Courtney received and cashed a settlement check for $6,569.32. In June 2006, the claims administrator sent Courtney a letter informing him that his Block 1 shares were not included in the settlement because they "were not exchanged for shares or assets during the Class Period as USA Waste (the acquiring company) and its securities simply underwent a name change."

Courtney filed suit against the WMI defendants in Louisiana state court in April 2004, alleging securities fraud and negligence for WMI's conduct during and following the July 1998 merger. The WMI defendants removed the case to federal court in Louisiana and the JPML ordered the case transferred to the Southern District of Texas.[1] The WMI defendants then moved to dismiss for failure to state a claim. The district court denied their motion and ordered the WMI defendants to file a motion for summary judgment on whether "the Release prevent[s] Courtney from pursuing claims for the value that his block of 37,902 shares lost, even though the Settlement compensated Courtney only for the value that the block of 9,842 shares lost." The WMI defendants filed the requested motion for summary judgment, which the district court granted. Courtney appealed.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo and applies the same criteria as the district court. Fed. Deposit Ins. Corp. v. Laguarta, 939 F.2d 1231, 1236 (5th Cir. 1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the

---

[1] Courtney's case was assigned to the district court judge who presided over the WMI class action settlement.

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This Court looks to the pleadings, depositions, answers to interrogatories, and affidavits to determine whether any genuine issue of material fact remains. Fed. Deposit Ins. Corp., 939 F.2d at 1236. "Accordingly, we review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." Id. (internal quotations omitted).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). To defeat summary judgment, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice." Id.

## III. DISCUSSION

Courtney argues that the Release was ambiguous, and that he reasonably, but mistakenly, believed that he had not released his claims with regard to any uncompensated stock when he filed his proof of loss and later accepted the settlement check. We affirm the district court's finding that the Release is not ambiguous and that it bars Courtney's claims.

"Whether a written agreement is ambiguous or whether it clearly demonstrates the intent of the parties is a question of law. Likewise, . . . the interpretation of an unambiguous instrument is a question of law." Shelton v. Exxon Corp., 921 F.2d 595, 602–03 (5th Cir. 1991). Public policy "favors and encourages" the settlement of claims between parties and permits them to release future damages as part of a settlement agreement. W. J. Perryman & Co. v. Penn Mut. Fire Ins. Co., 324 F.2d 791, 793 (5th Cir. 1963). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that

would preclude summary judgment." Amoco Prod. Co. v. Tex. Meridian Res. Exploration, Inc., 180 F.3d 664, 669 (5th Cir. 1999).

Courtney argues that "resolution of [whether he reasonably interpreted the Release] will determine whether [he] can establish a defense of mistake under Federal common law (or vice of consent under Louisiana law)." Without deciding which law is applicable to this case—an issue which Courtney fails to brief—we hold that Courtney has failed to allege a claim under either Federal or Louisiana law.

Federal courts have recognized that section 153 of the Restatement (Second) of Contracts

> explains that the result of a unilateral mistake as to a basic assumption is that the contract becomes voidable if the mistaken party does not bear the risk of the mistake and (a) the mistake makes enforcement of the contract unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.

See, e.g., Johnson Mgmt. Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1260 (Fed. Cir. 2002). Under Louisiana law, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party," LA. CIV. CODE ANN. art. 1949 (2007), and "unilateral error does not vitiate consent if the cause of the error was the complaining party's inexcusable neglect in discovering the error," Smith v. Remodeling Serv., Inc., 648 So. 2d 995, 999 (La. Ct. App. 1994).

The Release, which is part of the settlement agreement, states that class members who accept the settlement release all claims "arising out of or related, directly or indirectly, to the purchase, acquisition, exchange, retention, transfer or sale of, or investment decision involving, any Waste Management security during the class period." The district court found that the Release is not ambiguous. The district court also found that although the Block 1 stock was

acquired prior to the class period (and therefore not covered by the settlement), it was stock retained during the class period and covered by the broad terms of the Release. We agree.

Courtney does not argue that his Block 1 stocks are not WMI stocks which he retained during the class period; he only argues that the meaning of "retained" is ambiguous in the Release and that he did not understand that he was releasing his claims with regard to his Block 1 stocks when he ratified the Release.

Under the terms of the Release, Courtney bore the risk of mistake and cannot avoid the contract on that basis. Johnson, 308 F.3d at 1260. Section 154(c) of the Restatement (Second) of Contracts states that a party bears the risk of mistake when "the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." The Release stated: "[i]f you are a Class Member and this settlement is approved, your rights will be affected. You should read this Notice carefully." The release also stated that class members should "CAREFULLY REVIEW THE TERMS OF THE RELEASE" because "[i]t will affect your rights if you remain in the class." Courtney, a sophisticated investor, was in the best position to determine whether the settlement was advantageous to him. Under these circumstances, Courtney bore the risk of mistake and he cannot avoid the contract under Federal common law.

Louisiana law requires that Courtney show that his mistake was known or should have been known to WMI. LA. CIV. CODE ANN. art. 1949. Courtney has not introduced any evidence to show that WMI knew or had any reason to know of his mistaken interpretation of the Release. Summary judgment against Courtney was proper because WMI had no reason to know that Courtney unilaterally misinterpreted the unambiguous terms of the Release.

Courtney also argues that summary judgment is improper because he attempted to rescind the settlement agreement by tendering the settlement

proceeds to WMI in November 2006, nearly two years after he filed this lawsuit and more than three years after the claims administrator informed him, in July 2003, that his Block 1 stocks would not be compensated under the settlement. The district court found that Courtney's "offer to give back the consideration, years later and in the course of litigation, does not negate the manifestation of his assent to be bound by the settlement agreement through knowingly receiving and retaining consideration for his claims." Courtney cites the Restatement (Second) of Contracts § 381 in support of his position. The Restatement states that "[t]he power of a party to avoid a contract for misrepresentation or mistake is lost if after he . . . has reason to know of a non-fraudulent misrepresentation or mistake he does not within a reasonable time manifest to the other party his intention to avoid it." RESTATEMENT (SECOND) OF CONTRACTS § 381(2). Courtney argues that the question of whether he rescinded the contract in a "reasonable time" is for the jury. As discussed above, however, the settlement agreement is not a contract that Courtney can "avoid for . . . mistake." Therefore, his argument for recission must fail.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.