**RESOLUTION TRUST CORPORATION, as Receiver of Community Savings & Loan Association, Plaintiff–Appellee,**

v.

**Peter JUERGENS, Defendant–Appellant.**

**No. 91–2451.**

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1992.

Decided May 21, 1992.

Patricia M. Gibeault (argued), Catherine J. Furay, Axley & Brynelson, Madison, Wis., for plaintiff-appellee.

Patrick R. Burns, Machulak & Hutchinson, Brookfield, Wis. (argued), for defendant-appellant.

Before FLAUM and MANION, Circuit Judges, and SHADUR, District Judge.[*]

SHADUR, District Judge.

This lawsuit is yet another product of what is unfortunately one of our country's major growth industries: a proceeding by Resolution Trust Corporation ("RTC") to enforce an obligation due to a now-defunct savings and loan association for which RTC is receiver. As always, RTC seeks to call to its aid the special status accorded to it by judicial doctrine (the principle originally announced in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)) and by Congress (the codification of *D'Oench, Duhme* as to FDIC at 12 U.S.C. § 1823(e), made applicable to RTC by 12 U.S.C. § 1441a(b)(4)).[1] This time, however, the result is driven primarily by provisions of the Uniform Commercial Code—more specifically its enactment in Wisconsin (Wis.Stat. ch. 403, the relevant provisions of which are cited here as "Section 403.—"). We affirm the summary judgment obtained by RTC below.

*Facts*

With the limited exceptions noted below as to some gaps in the factual record, the parties have no quarrel as to the underlying facts. What follows, then, borrows freely from the opinion of the district court setting out the undisputed evidence.

On May 31, 1984 Peter Juergens ("Juergens") executed and delivered to limited partnership National Select Placement XV ("National") a promissory note (the "Juergens Note") in the principal amount of $134,200—the purchase price for 20 "Inter-

---

[*] Honorable Milton I. Shadur, of the Northern District of Illinois, is sitting by designation.

[1] We hereafter cite the various relevant provisions drawn from Title 12 as "Section—." Though we also adopt the same "Section—" us-age for the Wisconsin Uniform Commercial Code provisions that come into play, the statutory numbering there is so different that no confusion should result from the dual usage.

ests" in the partnership. On June 29, 1984 National borrowed money from Community Savings & Loan Association ("Community"), evidenced by a note in the principal amount of $2,331,300 (the "National Note").[2] National indorsed the Juergens Note to Community as partial collateral for the National Note.

At some unknown date Community indorsed the Juergens Note to Admiral Insurance Company ("Admiral"). At some later but also unknown date before this case began, Admiral allegedly transferred the Juergens Note back to Community, though without an indorsement. We say "allegedly" because RTC has proffered no evidence to show when, how or why that transfer occurred. RTC did produce a copy of the Juergens Note as an exhibit to its Complaint, asserting that it found the Juergens Note among Community's assets when it took over as receiver. Juergens did not dispute in the trial court, but attempts to dispute before us, whether RTC has demonstrated that it really was in possession of the Juergens Note—an issue that is further discussed below.

Each of Juergens, National and Community appears to have suffered some financial calamity since entering into the transactions relevant to this case. National defaulted on the National Note, and it remains in default to the tune of $77,951.15 plus interest. Juergens has defaulted on the Juergens Note, owing $52,400 plus interest. And on February 17, 1989 Federal Savings & Loan Insurance Corporation ("FSLIC") declared Community insolvent and became conservator of its assets.

RTC came into existence as the result of the August 9, 1989 enactment of the Financial Institutions Reform, Recovery & Enforcement Act of 1989, and it then succeeded to the rights of FSLIC as conservator. Community went into receivership on February 9, 1990, and RTC was then appointed receiver. As receiver RTC succeeded to "all rights, titles, powers and privileges of [Community]" (Section 1821(d)(2)(A)(i)), including the power to "collect all obligations and money due [Community]" (Section 1821(d)(2)(B)(ii)).

### Standard of Review

■ RTC prevailed below on its motion for summary judgment under Fed. R.Civ.P. ("Rule") 56. We review such a grant of summary judgment de novo (*Matuszak v. Torrington Co.*, 927 F.2d 320, 322 (7th Cir.1991)). We may of course affirm on any ground that finds support in the record (*Sims v. Mulcahy*, 902 F.2d 524, 537 (7th Cir.1990)).

Rule 56 requires that we rule in favor of the moving party—here RTC—if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Familiar Rule 56 principles impose on RTC as movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose the court is called on to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to nonmovant Juergens (*De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)).

But once it appears from RTC's presentation that it has met its burden in facial terms, Juergens cannot stave off summary judgment merely by saying that some "genuine" and "material" factual issue is in dispute. To demonstrate that an issue is genuine Juergens must cite to some evidence in the record sufficient to suggest that his view of the issue might be adopted by a reasonable factfinder (*Anderson v.*

---

**2.** Juergens' affidavit in opposition to RTC's summary judgment motion included an assertion that John Vishnevsky ("Vishnevsky") was "personal guarantor" of the National Note. But a review of the record discloses no personal guaranty as such—perhaps Juergens was referring to the fact that the limited partnership's execution of the note was by its two general partners, one a corporation and the other Vishnevsky individ-

ually (in each instance the general partner's signature was not that of Vishnevsky himself, but rather that of James R. Germain, described as "attorney-in-fact"). In any event the existence of Vishnevsky's personal liability—whether as guarantor or as general partner responsible for partnership obligations—makes no difference, so we will follow Juergens' characterization.

*Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1304 (7th Cir.1991)). To demonstrate that an issue is material Juergens must show that the issue is outcome-determinative under the applicable substantive law (*Pritchard v. Rainfair, Inc.,* 945 F.2d 185, 191 (7th Cir.1991)).

### RTC's Right To Recover

We begin with a look at RTC's status as holder of the Juergens Note, as defined by Wisconsin's enactment of the UCC. Wis. Stat. § 401.201(20) describes a "holder" as:

> a person who is in possession of a document of title or an instrument or a certificated investment security drawn, issued or endorsed to him or her or to his or her order or to bearer or in blank.

Section 403.301 in turn sets out the enforcement rights of a holder:

> The holder of an instrument whether or not he is the owner may transfer or negotiate it and [with an exception not relevant here] discharge it or enforce payment in his own name.

As long as the signatures on a note are established and admitted (which they were on both the Juergens and National Notes), the mere *production* of a note entitles the holder to recover "unless the defendant establishes a defense" (Section 403.307(2)). Lack of consideration forms a complete defense against payment to the original payee (*In re Vogel's Estate,* 259 Wis. 73, 76, 47 N.W.2d 333, 334 (1951)). But the rule is different as against a subsequent holder: There a lack of consideration requires the holder to prove that it is a "holder in due course" (Section 403.306(3))—that it took the note for value, in good faith and without notice of the lack of consideration or other applicable defenses (Section 403.-302(1)).

In his brief below opposing RTC's motion for summary judgment, Juergens argued the existence of one and only one item that he identified as a genuine issue of material fact: that he had received no valuable consideration from National because the 20 Interests in the real estate partnership "were not worth what they were represented to be worth" (Juergens Br. 2–3).[3] That assertion, if proved, would have required RTC to prove it was a holder in due course—a somewhat heavier burden than proving mere holder status.

In support of his assertion Juergens proffered a supporting affidavit by his attorney Michael Finn and another by Juergens himself. Judge Stadtmueller excluded the Finn affidavit altogether, finding it to be "composed of nothing more than conclusions of law and factual assertions not based upon personal knowledge." As for the Juergens affidavit, the judge found that it provided no factual support for the purported lack of consideration. Juergens now challenges the exclusion of the Finn affidavit and the substantive rejection of the Juergens affidavit. Neither challenge has any merit.

■ Finn's purported "affidavit" was really a brief, laden with conclusory legal statements and barren of any relevant facts of which Finn had personal knowledge. Just as "One swallow does not make a spring,"[4] so the mere attachment of a jurat does not automatically make an affidavit. After all, summary judgment is supposed to be a substitute for trial, and an affidavit in support of a Rule 56 motion is a substitute for live testimony—as Rule 56(e) reads in relevant part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

---

**3.** Juergens later filed a supplementary brief, contending that RTC must first look to Vishnevsky as personal guarantor of the National Note before RTC could proceed against Juergens on the Juergens Note. What became of that theory does not appear from the record before us.

Apart from any question as to its validity (see n. 2), what controls here is that it is not raised on this appeal.

**4.** Or "a summer," depending on whether you consult Aristotle or Cervantes (among others).

If Finn had been called to the stand at a trial in this case, he plainly could have contributed no admissible testimony. Exclusion of the Finn affidavit was thus entirely proper under Rule 56(e).

Juergens' affidavit poses a related problem, and it ultimately serves him no better. There Juergens asserts that he received no "good and valuable consideration" or "benefit of the bargain" from National when he executed the Juergens Note. Evidently he means to suggest that National was some kind of a sham operation and that Vishnevsky had flimflammed him in the transaction from which the Juergens Note emerged.

But Juergens has offered no documentary evidence, nor any evidentiary facts from personal knowledge, to support that assertion. Even when Juergens is accorded the favorable inferences required by Rule 56, it is clear that no reasonable factfinder could have found that Juergens could prove lack of consideration just by taking the stand and reciting legal buzzwords. So the court concluded in *Hooper v. Mercantile Bank & Trust*, 762 S.W.2d 383, 386–87 (Tex.App. 1988), applying Texas' own summary judgment standards to nearly identical facts, and so we conclude when applying federal summary judgment standards.

We have said that Juergens' factual opposition to RTC's summary judgment motion was limited to the claimed lack of consideration for the Juergens Note. That oversimplifies matters a bit, because Juergens' Br. 3–4 also advanced this legal argument:

> It is Defendant's contention that Plaintiff is not a holder in due course of the note. Neither RTC nor Community Savings and Loan Association took the Juergens note for value and without notice that it was overdue. The Juergens note was never timely paid. A review of the books would have indicated that this was a bad note.

But Juergens tendered nothing by way of evidence to support those statements either. To the contrary, the affidavit supporting RTC's motion shows that all payments on account of the Juergens Note from the beginning were received by Community (the execution of the National Note, collateralized by assignment of the Juergens Note to Community, took place in June 1984, while the first installment on the Juergens Note fell due and was paid months later—in April 1985). By definition there had been no default on the Juergens Note when Community acquired it. Hence Juergens' argument, though not articulated in those terms, had to rest on the notion that the status of the Juergens Note as "a bad note" should be determined as of the later (unspecified) date of its reacquisition by Community from Admiral—a misguided premise that we scotch a bit later in this opinion.

That really dispatches Juergens' contentions that were tendered for decision below. Here, however, Juergens tries to expand the issues by urging (1) that RTC did not prove possession of the Juergens Note and (2) that the lack of an indorsement from Admiral back to Community somehow defeats RTC's claim. Neither argument was made below, so neither can be made here. "We have repeatedly held that arguments not presented to the trial court are waived and cannot be raised for the first time on appeal" (*In re Kroner*, 953 F.2d 317, 319 (7th Cir.1992)). Juergens contends before us (R.Br. 5) that the issue was raised below because his answer asserted the absence of information sufficient to form a belief as to the truth of the RTC Complaint's allegations about the Community-to-Admiral-to-Community transfers of the Juergens Note. But that is a wholly empty argument, for Rule 56(e) expressly forbids any such reliance on mere pleadings rather than evidentiary submissions in opposition to summary judgment motions.

■ Juergens seeks to dodge that bullet by contending that his newly-proffered arguments prove RTC's failure to make out a prima facie case. But Juergens also misapprehends the nature of summary judgment law, which does not permit a nonmovant defendant to delay pointing out claimed flaws in the plaintiff's prima facie case until an appeal is under way. And to compound his deficiencies, Juergens also misapprehends the nature of the prima facie

case to recover on a note. As we have already stated, once a note's signatures are established and admitted the mere production of that note entitles the holder to recover absent affirmative defenses. Once RTC produced the Juergens Note, then, Juergens had the burden of proving that RTC did not in fact find the note among Community's assets—a burden that he did not even attempt to satisfy below.

■ Nor did RTC have any obligation to explain, nor was it legally handicapped by, the lack of an indorsement from Admiral back to Community. When RTC acquired Community's rights in the Juergens Note, the chain of written indorsements ran from Juergens to National to Community to Admiral. Community had then gotten the note back without an indorsement back to Community. Section 403.208 renders the lack of such an indorsement irrelevant:

> Where an instrument is returned to or reacquired by a prior party he may cancel any indorsement which is not necessary to his title and reissue or further negotiate the instrument, but any intervening party is discharged as against the reacquiring party and subsequent holders not in due course and if his indorsement has been canceled is discharged as against subsequent holders in due course as well.

In terms of that statute Community "reacquired" the Juergens Note when Admiral returned it. Under the UCC, as at common law, a reacquirer needs only to possess the note—it need not be the last indorsee in order to exercise its rights to cancel prior indorsements (either before or after bringing suit, incidentally) and to demand payment. That conclusion emerges clearly from the decisions of non-Wisconsin courts construing their own states' versions of UCC § 3–208 (see, e.g., *Dixie Sav. & Loan Ass'n v. Walter*, 557 So.2d 1044, 1046 (La. App.1990) (citing, in addition to the UCC, an 1850 decision to the same effect); *Guaranty Fed. Sav. & Loan Ass'n v. Horseshoe Operating Co.*, 748 S.W.2d 519, 528 (Tex. App.1988) (also citing decisions at common law dating back to 1912); *United Credit Corp. v. Necamp*, 19 U.C.C.Rep.Serv. 1197, 1202 (Pa.Ct.Comm.Pl.1976); *Schoonmaker v. Merchants Nat'l Bank & Trust Co. of Syracuse*, 81 Misc.2d 967, 365 N.Y.S.2d 103, 107 (Co.Ct.1974)).

Intervening indorsements simply vanish from the chain of title when cancelled by a reacquirer. That concept is the obvious product of the principle that permits the current holder of a negotiable instrument to sue its predecessor in the indorsement chain, in which event that party can in turn look to its own predecessor. If those lawsuits up the chain would ultimately lead back to the current holder, that pointless circular process is best avoided by the cancellation of the intervening indorsements and the discharge of those intermediate parties from liability (as Section 403.208 specifies).

■ It follows that a reacquiring party does not simply reacquire the note. Along with the note comes the bundle of rights that the reacquiring party had when it last possessed the note. Thus when it came into possession of the Juergens Note, RTC—which at that point became entitled to cancel the indorsement from Community to Admiral—acquired the same rights as a holder that its predecessor Community had possessed when it earlier held the Juergens Note.

In this instance Juergens unquestionably did not default until after Community had acquired the Juergens Note from National. That being so, nothing in the record casts a cloud on Community's original holder-in-due-course status. And because that same status attaches to Community's reacquisition (and hence to RTC, which stands in Community's shoes for that purpose), we need not reach Juergens' argument that his later default somehow makes it impossible for RTC to be a holder in due course.

■ Nor do we have to resolve RTC's counter-argument that the *D'Oench, Duhme* doctrine and its statutory codification defang the lack-of-consideration defense. Because the applicability of that doctrine to cases like this one will unquestionably continue to recur as the S & L litigation machine churns on, however, we

find it worth observing that RTC obviously has the better of the argument on that score. Lack of consideration or any other defense against payment to a federally insured financial institution or its receiver must be plainly evidenced by the institution's formal and board-approved records (see, e.g., the discussion and application of the doctrine in *FDIC v. Wright*, 942 F.2d 1089, 1098–99 (7th Cir.1991)). There was no such evidence of lack of consideration in Community's records. Even if we were to stretch Rule 56 beyond the breaking point by finding an issue of material fact as to lack of consideration, the codified *D'Oench, Duhme* principle would doom Juergens' defense.

### Conclusion

In the dispositive language of Rule 56, "there is no genuine issue as to any material fact, and [RTC] is entitled to a judgment as a matter of law." Accordingly the decision of the district court granting RTC such a judgment is AFFIRMED.