United States Court of Appeals,

Fifth Circuit.

No. 91-7304.

RESOLUTION TRUST CORPORATION, as Receiver for Southwest Federal Savings Association, Plaintiff-Appellee,

v.

SHARIF-MUNIR-DAVIDSON DEVELOPMENT CORPORATION, et al., Defendants,

SHARIF-MUNIR-DAVIDSON DEVELOPMENT CORPORATION, Ramsey M. Munir and the Estate of Louay E. Sharif, Defendants-Counter Plaintiffs-Appellants,

RESOLUTION TRUST CORPORATION, as Receiver for Southwest Savings Association, Intervening Counter Defendant-Appellee.

June 14, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

GOLDBERG, Circuit Judge:

Sharif-Munir-Davidson Development Corporation ("SMD"), Ramsey M. Munir ("Munir") and the Estate of Louay E. Sharif ("Sharif"), were sued by Southwest Federal Savings Association ("Southwest" or "Bank"), a conservatorship[1] of the Resolution Trust Corporation ("RTC"), on a promissory note and guaranties thereon. Summary judgment was entered for plaintiff, after defendants failed to respond to plaintiff's motion for summary judgment by the deadline set by operation of the local rules. Defendants claim that the court below improperly granted summary judgment for plaintiff. Specifically, defendants argue that under the circumstances, the district court's extension of the deadline for discovery operated as an extension of the deadline for response to the plaintiff's motion for summary judgment, and that as a result they were not required to file any affidavit under Fed.R.Civ.P. 56(f) in order to obtain more time to complete discovery prior to the court's consideration of the motion for summary judgment. Defendants also contend that the district

---

[1]Southwest was first placed by the Federal Deposit Insurance Corporation ("FDIC") into RTC conservatorship. Later, FDIC placed Southwest into RTC receivership. RTC-Receiver now owns the note and guaranties at issue in this case, having purchased and assumed these assets from Southwest in a bulk transaction.

court erred in refusing them leave to amend their answer to plaintiff's complaint more than one year after the litigation began. Defendants seek reversal of summary judgment and a remand for trial on the amount of damages owed under the guaranty. Plaintiff contends that even considering the amended answer and the evidence in defendants' affidavits (filed after the deadline for response to the motion for summary judgment had technically expired), there is no issue of material fact or affirmative defense which could affect the outcome of the case if it went to trial. We agree, and therefore affirm the district court.

## FACTS

On October 29, 1985, SMD and Southwest entered into a loan agreement. That same day, defendants Sharif and Munir entered into a guaranty agreement securing the note, and executed a deed of trust giving Southwest a security interest in an office building owned by defendants. In addition, defendants executed an "Assignment of Leases and Rents" and an "Equity Participation Agreement," giving the Bank certain additional rights with respect to the office building securing the note.

SMD defaulted on the note in 1987. Southwest notified SMD that SMD was in default, but SMD failed to cure. When Southwest foreclosed on the office building, it was unable to collect the full amount owing on the note. In July, 1988, Southwest filed suit against defendants in state court to collect the deficiency.

After Southwest sued defendants, Southwest was placed by the FDIC into RTC conservatorship, and then into RTC receivership. Substantially all of Southwest's assets (including the note and guaranty at issue in this case) were transferred to RTC by way of a purchase and assumption transaction. RTC then intervened in the pending state court action by Southwest against defendants, and removed the case to federal court on June 15, 1990. Defendants counterclaimed and asserted various affirmative defenses, including failure of consideration and breach of a profit sharing agreement.

Southwest and RTC (hereinafter "Southwest/RTC" or "plaintiff") filed a motion for summary judgment on May 3, 1991. Local rules in the United States District Court for the Northern District

of Texas specify that a response to a motion for summary judgment is due within twenty days of its filing, which would have been May 23, 1991. However, defendants did not file their response to the motion for summary judgment until August 2, 1991.

On May 22, 1991, several defendants moved to have their current counsel withdraw and to substitute new counsel. That motion was granted on May 23, 1991, the same day on which the local rules specified that a response to plaintiff's motion for summary judgment was due.

On May 24, 1991, both parties requested extension of the discovery deadline from June 3, 1991, to August 2, 1991, agreeing that the extension of discovery was not interposed for delay, but for the purpose of enabling defendants' new counsel to become "acclimated" to the case and to timely institute and complete discovery. On May 29, 1991, the court entered an order extending the deadlines for discovery and for filing of a "trial length estimate" until August 2, 1991.

On June 18, 1991 and again on July 8, 1991, several defendants moved to have their counsel withdraw and to substitute new counsel. These motions were granted on June 27, 1991, and July 8, 1991, respectively.

On July 22, 1991, the defendants made a motion for leave to file an amended answer to the complaint. On July 24, 1991, both parties motioned for a second extension of the discovery deadline (from August 2, 1991, to September 17, 1991). That same day, the court entered an opinion and order denying defendants leave to amend their answer to plaintiff's complaint, and granting plaintiff's motion for summary judgment. The discovery deadline set by the court in its order of May 29, 1991, was still nine days away. No hearing date had ever been scheduled on the summary judgment motion, and no defendant had filed any response to that motion. The district court stated that the summary judgment motion had been ripe for consideration since May 23, 1991. The court did not mention its May 29, 1991, order extending discovery until August 2, 1991, nor did the court mention any of its orders after May 23, 1991, granting defendants' counsel leave to withdraw and to substitute new counsel.

On July 29, 1991, defendants moved for reconsideration of the order granting summary judgment for plaintiff. On August 2, 1991, the date which the parties had chosen and the court had

approved as the deadline for completion of discovery, the defendants submitted a response to plaintiff's motion for summary judgment, which included the arguments that defendants had sought to make in their amended answer, as well as affidavits meant to support the argument that Southwest had violated its alleged "bilateral obligations" under one of the loan agreements.

The motion for reconsideration of summary judgment was denied on November 11, 1991. On December 2, 1991, appellants filed this appeal. At the heart of this appeal is whether certain defenses to enforcement of the guaranty agreement were timely made or would have been effective.

DISCUSSION

Our review of the district court's decision to preclude further discovery before granting summary judgment is limited to whether the district court abused its discretion.[2] *See, e.g., Solo Serve Corp. v. Westowne Assoc.,* 929 F.2d 160, 167 (5th Cir.1991); *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 102 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1193 (5th Cir.1986). If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion. *See, e.g., Netto v. Amtrak,* 863 F.2d 1210, 1216 (5th Cir.1989) (citing *Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1029-30 (5th Cir.1983)); *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Solo Serve,* 929 F.2d at 167; *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990).

We review the grant of summary judgment itself *de novo,* including the question whether the court provided the notice required by Fed.R.Civ.P. 56. *See, e.g., International Shortstop,* 939 F.2d at 1263; *Ackerman v. Federal Deposit Ins. Corp.,* 973 F.2d 1221, 1223 (5th Cir.1992); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1444 (1993). Summary judgment is appropriate if "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, ... demonstrate there is no genuine issue as to any material fact and that the moving party is entitled

[2]In this case, the court issued an order approving the parties' joint motion to extend discovery until August 2, 1991. The parties did not contemplate that summary judgment would be entered prior to August 2, 1991, but the court entered summary judgment on July 24, 1991.

to judgment as a matter of law." *Ayo v. Johns-Manville Sales Corp.,* 771 F.2d 902, 904 (5th Cir.1985). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In performing this analysis we look at the evidence in the light most favorable to the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). If no rational trier of fact could possibly find for the nonmoving party, then summary judgment is proper. *Id.*

Defendants did not make a written or oral statement to the court specifying why they could not complete discovery by the date on which the local rules specified that their response to plaintiff's summary judgment motion was due, and how further discovery would enable defendants to oppose plaintiff's summary judgment motion. *See International Shortstop,* 939 F.2d at 1266-67. However, defendants contend that it was reasonable for them to rely on the court's extension of the deadline for discovery as a simultaneous (but inexplicit) extension of the time in which to respond to the motion for summary judgment and in which to amend their answer.

Ordinarily, defendants' failure to comply with the requirements of Fed.R.Civ.P. 56(f) would preclude them from arguing that the court's refusal to permit further discovery prior to considering the motion for summary judgment was an abuse of discretion. *See, e.g., International Shortstop,* 939 F.2d 1257; *Washington v. Allstate Ins. Co.,* 901 F.2d at 1285-86; *Securities Exchange Comm. v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981); *Krim,* 989 F.2d at 1442-43. In this case, however, the district court had already implicitly acknowledged the defendants' need for further discovery prior to responding to plaintiff's motion for summary judgment.[3]

Any reasonable doubt about whether the defendants were on notice that summary judgment

[3]On the very day that the local rules specified that defendants' response to plaintiff's motion for summary judgment was due (May 23, 1991), the court issued an order extending the discovery deadline to August 2, 1991. We presume that the district court was aware of the local rules, and therefore we also presume that the district court was aware it was extending the deadline for completion of discovery *past* the deadline set by the local rules for defendants to respond to plaintiff's motion for summary judgment. We also note that before and after the extension of discovery, the court approved the substitution of new counsel for some defendants.

might be granted for plaintiff prior to August 2, 1991, must be resolved in favor of the defendants. *See, e.g., NL Industries, Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). In *Capital Films Corp. v. Charles Fries Productions, Inc.,* 628 F.2d 387, 390-91 (5th Cir.1980), this court recognized that when a district court's actions induce a party to believe he has additional time to respond to a motion for summary judgment, the entry of summary judgment prior to the expiration of that additional time is an abuse of discretion. In *Capital Films,* the defendant filed a motion for summary judgment more than a year before the district court granted the motion. We reversed the grant of summary judgment because certain actions by the district court had induced reasonable reliance that the case would go to trial. The court had carried the case on the jury trial docket for several consecutive months before granting summary judgment, and had issued a pretrial order. Although the motion for summary judgment had been filed over a year earlier, the nonmoving party was never given reason to believe that "as of a certain date, the district court would take the case under advisement." *Capital Films,* 628 F.2d at 392.[4]

Federal Rule of Civil Procedure 56 contemplates "ten days advance notice to the adverse party that the matter will ... be taken under advisement as of a certain day." *Kibort v. Hampton,* 538 F.2d 90, 91 (5th Cir.1976). *See also Fernandez-Montes v. Allied Pilots Assn.,* 987 F.2d 278, 283 n. 7 (5th Cir.1993) (collecting cases). Summary judgment is improper if "[t]here was no reason for the [nonmoving party] to suspect that the court was about to rule on the motion." *Kibort,* 538 F.2d at 91. Had the defendants learned of the court's intention to consider plaintiff's motion for summary judgment prior to the expiration of the time the court had previously approved for discovery, the defendants might have submitted their responsive pleading and evidence prior to the court's ruling on the matter, or they might have submitted a request for a continuance pursuant to Fed.R.Civ.P.

---

[4]*Capital Films* subsequently was disapproved by this court on other grounds. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 445 (5th Cir.1991) (criticizing *Capital Films* insofar as it held that a district court may *never* enter summary judgment *sua sponte;* approving *Capital Films* insofar as it stated that summary judgment must involve both proper notice to the adverse party that the court will be taking the case under advisement as of a certain date, and an opportunity to respond).

56(f).[5] Defendants had no reason to believe they needed to file a Fed.R.Civ.P. 56(f) affidavit stating their need for further discovery prior to opposing the motion for summary judgment, because the district court had already effectively acknowledged their need for further discovery in an order dated May 29, 1991. That order (extending discovery) had been entered *on the same day that defendants' response to plaintiff's motion for summary judgment was due under the local rules.* Moreover, the court had granted defendants the opportunity to substitute new counsel in late May, June and July of 1991.

In light of these circumstances, we find that the court's grant of summary judgment without notice that the court contemplated ruling on the motion for summary judgment was an abuse of discretion. However, this error was harmless. The arguments in defendants' August 2, 1991 response to plaintiff's motion for summary judgment,[6] and the affidavits appended thereto, do not present a genuine issue of material fact.[7]

We do not reach the question whether the district court's denial of leave to amend defendants' answer to plaintiff's complaint was an abuse of discretion.[8] Even if it was an abuse of discretion, the

---

[5]The affidavit would have had to state why discovery had not been completed, what further discovery was proposed, and how that discovery would enable the nonmovant to oppose summary judgment. *See, e.g., International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1266-67 (5th Cir.1991).

[6]These arguments include the affirmative defenses that defendants had sought to assert in an amendment to their answer in July, 1991. The court denied the defendants' motion to amend on July 24, 1991, in the same order in which it granted summary judgment for plaintiff.

[7]When there is no notice to the nonmovant, summary judgment will be considered harmless if the nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact. *See Powell v. United States,* 849 F.2d 1576, 1582 (5th Cir.1988). As discussed *infra,* the affirmative defenses sought to be asserted are ineffective against the plaintiff. The affidavits pertain to those defenses and as such do not present issues of material fact which could possibly affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[8]Fed.R.Civ.P. 15(a) provides leave to amend a responsive pleading "shall be freely given when justice so requires." However, "[w]hether such an amendment should be granted is within the district judge's discretion." *Overseas Inns S.A. P.A. v. United States,* 911 F.2d 1146, 1150 (5th Cir.1990) (finding no abuse of discretion where district court denied leave to amend plaintiff's complaint after extensive pretrial proceedings had already taken place, including filing of motion for summary judgment by defendant) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 121 (5th

error would have been harmless because the affirmative defenses sought to be asserted in defendants' amended answer cannot be asserted against Southwest/RTC, which is a federal holder in due course. The federal holder in due course doctrine "bars makers of promissory notes from asserting "personal" defenses against the [government] in connection with purchase and assumption transactions involving insolvent banks." *Federal Savings and Loan Ins. Corp. v. Kralj,* 968 F.2d 500, 508 n. 19 (5th Cir.1992). *See also Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.,* 901 F.2d 1244, 1248 (5th Cir.1990); *Federal Sav. and Loan Ins. Corp. v. Murray,* 853 F.2d 1251, 1256-57 (5th Cir.1988); *Porras v. Petroplex Sav. Assn.,* 903 F.2d 379 (5th Cir.1990).

There is a strong federal policy favoring allowing the FDIC to collect on the obligations owed to failed thrifts without regard to agreements which tend to diminish or defeat that right. *See, e.g., Porras,* 903 F.2d at 380-81; *Campbell Leasing,* 901 F.2d at 1248. This policy was first announced in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), in which the Supreme Court held that a maker of a note may not assert defenses to collection by FDIC based on secret agreements of which FDIC could not have been made aware by reviewing records on file at the bank.

*D'Oench, Duhme* does not bar *all* defenses to collection on notes by the FDIC. It only bars

_____

Cir.1982); *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981)). The denial of leave to amend is not an abuse of discretion if there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The instant case had been pending before the district court for over a year when the court granted summary judgment and refused defendants leave to amend their answer, which suggests that the district court believed leave to amend the answer was being sought for purposes of delay, or that allowing amendment would cause undue prejudice to the plaintiff. The fact that an amendment would require a response from the plaintiff would not necessarily amount to undue prejudice by itself, however. *See William Inglis & Sons Baking Co v. ITT Continental Baking Co., Inc.,* 668 F.2d 1014, 1053 n. 68 (9th Cir.1981) (delay in proposing amendment, even after extensive pretrial proceedings, is normally insufficient by itself to constitute prejudice to adverse party that would justify denial of leave to amend), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The more cogent reason for denying the amendment would have been the futility of the proposed amendment. However, the court had permitted new counsel to substitute for some of defendants' counsel in May, June and July, 1991. One defendant proceeded pro se until July, 1991, at which time he obtained counsel. It is unclear what role new counsel was expected to play if the court anticipated entering summary judgment on the basis of the pleadings and evidence adduced prior to the appearance of new counsel for the defendants.

those defenses of which FDIC could not have been put on notice by reviewing records on file with the bank. *See Federal Deposit Ins. Corp. v. Laguarta,* 939 F.2d 1231, 1237 (5th Cir.1991) (citing *Federal Deposit Ins. Corp. v. McClanahan,* 795 F.2d 512, 515 (5th Cir.1986)).[9]

Defendants claim that Southwest helped cause the foreclosure on the secured property by failing to approve tenants pursuant to the "Assignments of Leases and Rents." The "Assignment of Leases and Rents" stated that defendants could not rent office space to any proposed tenant without the prior written approval of Southwest.[10] This provision was included for the benefit of the Bank, and not the debtors, and does not state that the Bank has any obligation to approve tenants. Hence, the obligation created by the clause pertaining to appro val of tenants is, on its face, unilateral. (Defendants have the duty to present potential tenants to the Bank, which can decide whether they are eligible for tenancy, and if so, on what terms and conditions.) However, defendants argue that

---

[9]*D'Oench, Duhme* was later codified at 12 U.S.C. § 1823(e), which provides:

> No agreement which tends to diminish or defeat the right, title, or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as a security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person ... claiming an adverse interest thereunder, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Prior to 1989, § 1823(e) did not technically apply to the FDIC acting in the capacity of receiver, but § 1823(e)'s "common-law" counterpart (based on *D'Oench, Duhme* ) applied. *Federal Deposit Ins. Corp. v. McClanahan,* 795 F.2d 512, 516 (5th Cir.1986); *Beighley v. Federal Deposit Ins. Corp.,* 868 F.2d 776 (5th Cir.1989). In 1989, § 1823(e) was made applicable to the FDIC acting in the role of receiver. Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. No. 101-73, 103 Stat. 183. *D'Oench, Duhme* and § 1823 also apply to the Resolution Trust Corporation. *See, e.g., Oliver v. Resolution Trust Corp.,* 955 F.2d 583 (8th Cir.1992); *Ward v. Resolution Trust Corp.,* 972 F.2d 196 (8th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993); *Resolution Trust Corp. v. Juergens,* 965 F.2d 149 (7th Cir.1992); *Adams v. Madison Realty & Development, Inc.,* 746 F.Supp. 419 (D.N.J.1990), *aff'd,* 937 F.2d 845 (3d Cir.1991). It is unclear whether § 1823(e), the statutory counterpart to *D'Oench, Duhme,* is coextensive with *D'Oench, Duhme,* but "courts generally give similar interpretations to section 1823(e) and the doctrine of *D'Oench, Duhme.*" *Federal Deposit Ins. Corp. v. Laguarta,* 939 F.2d 1231, 1238 (5th Cir.1991). *See also id.* at 1239 n. 18.

[10]The agreement required Southwest's approval as to the tenant and all guarantors of the tenant's lease, the terms and conditions of the lease, and the written lease form to be used.

the requirement that tenants be presented to Southwest for approval created bilateral obligations between the parties which were obvious on the face of the loan documents. Defendants contend that the Bank's right to approve all tenants under the Assignment of Lease and Rents was subject to the requirement that the approval not be unreasonably withheld.[11] They claim that in the instant case, approval was unreasonably withheld.[12] Defendants do not contend that approval of the tenants would have generated sufficient rent monies to prevent default on the promissory note, but contend that when foreclosure on the note occurred, low occupancy in the office building was partly to blame for the low selling price of the building, resulting in a larger deficiency than would have been the case had the Bank approved the tenants.

Assuming arguendo that the Assignment of Leases and Rents, Equity Participation Agreement, guaranty agreement, and promissory note were part of a single contract,[13] the crucial question is whether the Assignment of Leases and Rents created any obligations on the part of the Bank which could be the basis of the defense asserted by defendants. If the defense asserted here arises from an express written obligation undertaken by the Bank in its loan agreement with the defendants, then the defendants may assert the affirmative defense notwithstanding *D'Oench, Duhme.* *See Federal Deposit Ins. Corp. v. LaGuarta,* 939 F.2d 1231, 1237-39 (5th Cir.1991).

A close reading of the Assignment of Leases and Rents reveals that it does create certain

---

[11]Presumably, defendants would have us find this obligation under state law. However, they do not cite any authority for this proposition. We find it unnecessary to decide whether the obligation would exist under state law, because we believe that the Assignment of Leases and Rents does not provide sufficient notice on its face of such a potential defense.

[12]On August 2, 1991, the date on which discovery was to conclude under the court's May 29, 1991, order, defendants submitted their response to plaintiff's motion for summary judgment, which not only incorporated the defendants' arguments in their amended answer to plaintiff's complaint, but also proffered affidavits from persons who had applied for tenancy in the office building and had been turned down by the Bank.

[13]Defendants claim that the "Assignment of Leases and Rents," the "Equity Participation Agreement," and the guaranty agreement were all part of the same contract as the promissory note, because the documents are cross-referenced and because the Bank made the loan on the basis of the assurances provided in the other documents. Under Texas law, a contract may consist of multiple writings, all of which are integral to the agreement. *See Thigpen v. Sparks,* 983 F.2d 644, 646 (5th Cir.1993) (reviewing Texas law). *See also Federal Deposit Ins. Corp. v. LaGuarta,* 939 F.2d 1231, 1239 (5th Cir.1991) (assuming that several loan documents which cross-referenced one another were integral to the loan transaction in question).

obligations on the part of the Bank. The agreement provided that Southwest would be held harmless from any and all liability that might be incurred by defendants "under the Leases, or under or by reason of [the] Assignment, and from any and all claims and demands whatsoever which may be asserted against [Southwest] by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases, except for the willful misconduct, gross negligence or bad faith of [Southwest]." The import of this language is that the defendants could assert willful misconduct, gross negligence or bad faith against the Bank (but not necessarily RTC) in connection with any of the terms, covenants or agreements contained in *approved* leases. The agreement does not specifically state that potential tenants must be approved if their proposed tenancy would be "commercially reasonable," as defendants assert. The agreement only says that the Bank has the right to approve tenants. We do not believe that the language of the agreement would be sufficient *on its face* to put the receiver on notice of a potential defense by reason of the bilateral obligation asserted.[14] Hence, *D'Oench, Duhme* applies to bar the affirmative defense asserted.

In *Federal Deposit Ins. Corp. v. Hamilton,* 939 F.2d 1225 (5th Cir.1991), the FDIC sued to collect the amount owing on a note, and the defendant claimed that the bank from which FDIC obtained the note had failed to discharge its duty under prevailing banking customs to extend the defendants' line of credit in a timely fashion (which resulted in certain alleged setoff damages). This court held that *D'Oench, Duhme* barred the defense to FDIC's collection on the note, because the duty implied on the part of the Bank was not explicit from the terms of the agreement between the Bank and the debtor. 939 F.2d 1225, 1229-30, 1231 (5th Cir.1991). Although this court noted that equity arguments strongly supported the defendants' claim, *D'Oench, Duhme* nevertheless barred it. We explained the policy considerations which favored application of *D'Oench, Duhme* to bar the defendants' claim:

First, there is the concern that bank examiners may rely on the bank's records to ascertain all

---

[14]Moreover, we do not believe that the affidavits submitted by defendants establish that the withholding of approval was unreasonable, or that the office building diminished in value as a result of the withholding of approval.

of the insolvent banks' obligations.... "Fundamentally, *D'Oench* attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books. The doctrine means that the government has no duty to compile oral histories of the bank's customers and loan officers. Nor must the FDIC retain linguists and cryptologists to tease out the meaning of facially-unencumbered notes."

*Id.* at 1229-30 (quoting *Bowen v. Federal Deposit Ins. Corp.,* 915 F.2d 1013, 1016 (5th Cir.1990)).

In response to the argument that it would be less onerous for FDIC to be required to investigate prevailing banking customs than for FDIC to be required to investigate possible oral side agreements or collateral writings (the obligation prohibited in *D'Oench, Duhme* ) we responded that:

While the investigative burden is arguably less in the latter context, the case law interpreting the *D'Oench, Duhme* doctrine evidences a policy to prevent *any* such investigations and to avoid hair-splitting fact-based inquiries of the type that will ensue when assessing the obligations implied from prevailing banking practices.

*Id.* at 1230 n. 5.

The second justification for applying *D'Oench, Duhme* is that debtors who wish to have certain defenses or collateral terms in their agreements with banks are in a better position to protect themselves than is the FDIC. Debtors can "insist[ ] that the collateral terms be put in writing and properly recorded by the bank." For this reason, "the obligor and not the FDIC or the bank's innocent depositors or creditors should suffer the loss caused by the record omissions." *Id.* 939 F.2d at 1230.

These policies support the result in the instant case. If FDIC cannot be put to the trouble of researching every possible defense based on banking customs (some of which are embodied in state law), then neither can FDIC be required to research every possible defense based on state law, at least when the basis of the defense is not stated *explicitly* on the face of the documents in question.

Defendants' reliance on *Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir.1981), and *Federal Deposit Ins. Corp. v. Laguarta,* 939 F.2d 1231 (5th Cir.1991), is misplaced. Each of these cases involved documents which contained *explicit* statements of the bank's bilateral obligations to the debtor. *See Howell,* 655 F.2d at 747; *Laguarta,* 939 F.2d at 1234, 1239. In *Howell,* the Seventh Circuit found *D'Oench, Duhme* inapplicable to bar the affirmative defense of a defendant sued by FDIC. The FDIC had obtained from a bank a lease which *explicitly* stated that the bank was obligated to obtain title to certain equipment which the defendant would then be under an obligation to lease. When FDIC asserted the right to collect from the defendant the payments due under the

lease, the defendant was permitted to assert the affirmative defense that the bank had never obtained title to the equipment. In *LaGuarta,* this court reversed a summary judgment and remanded the case with instructions that *D'Oench, Duhme* would not bar the debtor from asserting an affirmative defense to FDIC's collection on a note, when the recorded loan agreement *explicitly* stated that the debtor was entitled to be advanced certain funds on a particular timetable, and the bank had refused to advance the funds, which contributed to the debtor's default on the note.

Defendants also claimed that the underlying debt was a non-negotiable note and hence not subject to federal holder in due course protection. In *Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793 (Tex.1992), the Texas Supreme Court, answering a certified question from the Fifth Circuit, decided that under Texas law a variable-interest rate note is a negotiable instrument, provided that the interest rate can be determined by reference to publicly available sources.[15]

Finally, defendants assert the affirmative defense that the guaranty agreement is facially illegal because it contains a clause against public policy under Texas law.[16] We need not decide whether the illegality of the clause would be obvious to RTC-Receiver from the face of the guaranty itself, such that *D'Oench, Duhme* would not apply to bar the affirmative defense of illegality, because the allegedly illegal clause is merely ancillary to the guaranty agreement and therefore severable under Texas law.[17]

---

[15]The promissory note in this case fits the description of a negotiable instrument provided in *Amberboy.* The promissory note carries a fluctuating rate of interest which is calculated using a complicated schedule based on a "base rate." The term "base rate," as used in the promissory note, "means the variable rate of interest established from time to time by RepublicBank Dallas as its general reference rate of interest." Although the promissory note specifically states that the base rate may change without specific notice to the maker of the note, the base rate is clearly "public, either known to or readily ascertainable by any interested person." *Amberboy,* 831 S.W.2d at 797-98.

[16]The guaranty agreement states that the guarantor's obligations shall not be waived, discharged or reduced, even if the debt being guaranteed is illegal in some way (e.g., involves forgery).

[17]If it is clear that the parties intended to contract for a legal purpose, a clause involving an illegal purpose is severable. *See, e.g., Panasonic Co., Div. of Matsushita Elec. Corp. v. Zinn,* 903 F.2d 1039, 1041-42 (5th Cir.1990); *Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978); *Rogers v. Wolfson,* 763 S.W.2d 922, 924 (Tex.App.—Dallas 1989, writ denied). In this case, as in *Panasonic v. Zinn,* there was no evidence presented to suggest that the parties would not have entered into the agreement absent the allegedly illegal provision. *See* 903 F.2d at 1041. None of

CONCLUSION

No material issue of fact remains which would require a trial, and on the facts adduced, summary judgment for defendants was proper. Therefore, the judgment of the district court is AFFIRMED.


EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment of the Court and in the majority's opinion except its holding that the district "court's grant of summary judgment without notice that the Court contemplated ruling on the motion for summary judgment was an abuse of discretion." Maj. op. at 4608. Rule 56 of the Federal Rules of Civil Procedure places the burden on the adverse party to file a response which "must set forth specific facts showing that there is a genuine issue for trial."[1] Fed.R.Civ.P. 56(e). Rule 56 also places the burden on the "party opposing the motion" to state why such "party cannot ... present ... facts essential to justify the party's opposition."[2] Fed.R.Civ.P. 56(f). As noted by the majority opinion, the local rules for the Northern District of Texas require a response within twenty days of the filing of a motion for summary judgment. *See* Maj. op. at 4605. Such local rule is sufficient for the notice required under Rule 56. *See Kibort v. Hampton,* 538 F.2d 90, 91 n. 1 (5th Cir.1976)

---

the parties allege that the actual promissory note secured by the guaranties is in any respect illegal, or that defendants Sharif and Munir did not actually execute the guaranty agreement.

[1] Rule 56(e) states, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, the summary judgment, if appropriate, shall be entered against the adverse party.* (emphasis added)

[2] Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

("Procedures provided by local rule in some districts requiring motions for summary judgment to be accompanied by briefs and requiring opposing affidavits and briefs to be filed within a period of not less than 10 days after which the court will consider the motion submitted for decision would appear to afford adequate hearing within the meaning of Rule 56.").

I disagree with the majority's assertion that "the district court ... *implicitly* acknowledged the defendants' need for further discovery prior to responding to plaintiff's motion for summary judgment." Maj. op. at 4606-07 (emphasis added).[3] The separate issue of discovery is not dispositive: Rule 56 requires filing of an affidavit or "some equivalent statement" which states reasons why such adverse party cannot present facts essential to justify the party's opposition. *See International Short Stop, Inc. v. Rally's Inc.,* 939 F.2d 1257, 1266-67 (5th Cir.1991), *cert. denied, ---* U.S. ----, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992) ("Although the preferred procedure is to present an affidavit in support of the requested continuance, so long as the nonmoving party indicates to the court by "some equivalent statement, preferably in writing' of its need for additional discovery, the nonmoving party is deemed to have invoked the rule." (citations omitted)). A motion for extension of time to complete discovery—especially one which fails to state that such discovery is needed to comply with a Rule 56 response—is insufficient. *See id.* 939 F.2d at 1267 (stating that "[t]he nonmoving party must show how the additional discovery will defeat the summary judgment motion, that is, will create a genuine dispute as to a material fact.").[4] Given the dictates of Rule 56 and the local rule—and defendants' failure to comply with either—the district court did not abuse its discretion by ruling on the motion for summary judgment.[5] *See Arkwright-Boston Mfrs. Mut. v. Aries*

---

[3]Aside from the district court's order extending the discovery deadline, there is no evidence in the record to suggest that the court granted the discovery extension to give the defendants more time to respond to plaintiff's motion for summary judgment.

[4]*See also supra* note 2.

[5]*NL Industries, Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965-66 (5th Cir.1991) (holding that Rule 56 permits a court to grant a summary judgment in favor of a party that did not request it, but only upon proper notice to the adverse party), *Capital Films Corp. v. Charles Fries Productions, Inc.,* 628 F.2d 387, 390-91 (5th Cir.1980) (holding that *sua sponte* entry of summary judgment on causes of action added to plaintiff's complaint after motion for summary judgment, violates Rule 56) (also holding that Rule 56 requires 10 day notice and "find[ing no] significant distinction between this case and the *Enochs [v. Sisson,* 301 F.2d 125 (5th Cir.1962) ]

*Marine Corp.,* 932 F.2d 442, 445 (5th Cir.1991) ("As the [Supreme] Court stated: "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.' " (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986))).

---

and *Kibort [v. Hampton,* 538 F.2d 90 (5th Cir.1976) ] cases."), and *Kibort v. Hampton, supra* (holding that Rule 56 contemplates 10 day notice but distinguishing cases where local rule requires briefs and opposing affidavits to be filed within a period of not less than 10 days after which the court will consider a motion for summary judgment) are inapposite.